The opinion of the court was delivered by
Düncan, J.
The writ was a trespass guare clausum fregit, and cutting down and carrying away certain trees, there growing, of the plaintiff. The writ is recited in the declaration, but the plaintiff below, the defendant in error, omits the entry into the close in his declaration, and the gravamen is laid in cutting down and carrying away certain trees of the plaintiff, growing in a certain plantation.
The variance between the writ and count cannot be taken advantage of in this stage-of the cause, and we are only to consider whether the count states a good cause of action.. It does state a good cause of action, but it is not one in which the title to the close where the trees grew can come directly in question. It is an action ele bonis asportatis: no injury to the freehold is alleged-: he might have title to the trees, and yet no right to the soil. He might have been tenant for years of the soil, and have only a right to the shade of the trees, or he might have purchased the standing trees from the owner of the soil. But as this cause goes back on the merits, it will be well for the plaintiff to make his count correspond with his writ: but, in this view, as the title to the freehold clearly appears not to be in him, but in some person entitled to the land surveyed, or the location in the name of Thomas Kopenheffer, and as he has no right to the trees distinct from his claim to the soil, he must have failed in this action.
The merits rest on one question: — who is the owner of Kopenheffer’s survey? If Weidman had the right to it, the plaintiff never can recover. Nothing but an adverse, exclusive possession for twenty-one years eould bar the right; for the non-payment of the purchase money, after survey returned, is not evidence of abandonment. Biddle’s Lessee v. Dougal, 5 Binn. 142. That is a matter between the state and the applicant. The state has given time for payment, and no one else has any thing to do with it. What matter is it to Kohr, that the state continues to extend the time of payment to the purchaser, on an executed contract, which a return for this purpose is ?
If Weidman was not the owner, but Kopenheffer was, still, if Kopenheffer had not the actual possession, he could not maintain trespass. Actual possession is necessary to maintain trespass in this *22 state. Constructive possession is sufficient, where there is no actual, notorious, adverse possession; but who is in the constructive possession, where neither has the actual possession ? It is in the owner, for possession always follows the ownership, unless there is an adverse possession.
Legal seisin carries with it the possession, unless there is a visible, exclusive, adverse possession, — not a casual entry. Possession and the right are presumed to go together till the contrary be shown. In unsettled lands, he who has the title has the possession, and may maintain trespass, unless an adverse possession has been taken; for where the possession is vacant, trespass will lie against a wrong-doer by him who has the legal right. But it seems now well settled, (and, I think, on rational principles,) that where a plaintiff is in actual possession, the defendant cannot give title in a third person in evidence: he may justify by command of the owner, but such command is traversable. These will be important inquiries on a subsequent trial, should the defendants not establish their right to the survey in the name of Kopenheffer.
It is not necessary to consider the numerous propositions and Answers which are complained of, seriatim; there is little variety in them. But take the whole scope and tendency of the answers relating to the matter in issue, I think there was error. The conveyance of M‘Cullouch to Kopenheffer, the name used in the application in 1766, some months before it was entered, was some evidence, in a case of this kind, that M‘Cidlouch was the discoverer of this vacant land, — for vacant it then was, — and that Kopenheffer bought his claim and right to a part of it. The recital, or rather misrecital, of an early warrant, though not evidence of a title against a third person, yet would be evidence inter se, between the parties to it, and if M‘Cullouch then had no title, but acquired it subsequently, Kopenheffer, on this conveyance, might recover from him the part conveyed, it would .enure to his use. This misrecital would not vitiate, the land being described. But, in the point of view material in this cause, it was evidence of a fact, that Thomas Kopenheffer, the supposed applicant, did acknowledge the claim of MiCullouch. There was no evidence to impugn it, or show it was a fabrication. In what was said by the court, as to the acceptance there was prima facie evidence; and that stood until the contrary was proved: — there was error in this.
The title, or the location and survey in Kopenheffer’s name, commenced in February, 1766, and was executed by the return of survey on the 3d of September, 1770. The title of Kohr did not commence until 17S4, fourteen years afterwards. The answer to the fifth proposition was erroneous, as applied to the cause and the parties: for though, under certain circumstances, as where a Survey .has been positively abandoned, it is unnecessary for the *23 surveyor to mark the lines again, particularly where it has been recently made, or where the survey returned is bounded on all sides by adjoining surveys; yet where there has been an inofficial survey, without right in the hands of the surveyor, I do not consider that the surveyor could adapt them to a subsequent warrant, which never had issued when the survey was made, or which was not in his hands. Indeed that is contrary to positive law, as it certainly always was contrary to the duty of the surveyor and his instructions, to survey again lands that had been previously surveyed and returned, without noticing the interference, so as to apprise the land office' of the interference. But it was left, as a fact for the jury to decide, that a first survey returned had been abandoned, and left open to subsequent rights, without any testimony or circumstance from' which such a relinquishment could be inferred. Abandonment is a term applied to deserted settlements, or warrants and applications on which there has been no survey; never to survey returned. There must be some positive evidence of relinquishment: the presumption is, that it is not relinquished ; for why should a man abandon a survey he had made and paid for, and procured the return. But the great error consisted in first stating, that the presumption was, that Kopenheffer was the owner and not the trustee of M‘Cullouch, and that was only to be repelled by evidence of payment of the fees, and having the survey made for him. Where there is only one application, this is the first presumption, and this was the case in the lottery plan of the 13th of Jlpril, 1769: but even there the owner may be identified by proof of handwriting and endorsement, to show by whom the application was entered. Scott’s Lessee v. Leather, 3 Yeates, 1S5. But in the application system of 1765 and 1766, it was customary to file applications in the office of the secretary of the land office, for numerous tracts, by the same person in the name of several persons; whether for the sake of rectifying fees, or some other cause not necessary now to inquire into, three hundred acres only were granted on one application, and the evidence constantly resorted to, has been the list filed by the man who paid the fees and entered the application; and, to authenticate this, it was usual to subscribe the real applicant, — as, here, William M‘Cullouch. The original list, with proof of the handwriting of the subscriber, hás been very often received as evidence, and indeed is primary evidence of the original owner. This rebuts the first presumption arising from the name, and then another presumption takes place, that the subscriber to the list is the real owner, and the fees of office being paid by him, this creates a resulting trust to his use. The name is a mere ceremony; the use results to the man who really entered the application. The nominee is but a trustee. The evidence was of this nature. The inception of the title was the act of M‘ Cidlouch; the subsequent fees were paid by him. To be sure, even this would not be con- *24 elusive evidence: that presumption might be likewise removed. As, if another had the survey made, paid the taxes, took posses» sion, occupied it for years as his own; especially if he transferred the right. The subject is open to inquiry, and the inquiry is not as to the name used, but who and for whose use was it used. A delay, an acquiescence, permitting acts to be done, — as a 'survey made, and sale, — would postpone the man who barely put in the location. Ewing v. Barton. But, in addition to the intrinsic evidence of Kopenheffer’s name being merely used as an instrument, a ceremony, there is all the extrinsic testimony, that M‘Cullouch was the owner: the conveyance by M‘Cullouch to Kopenheffer, — the superintendance of the survey. It is a mistake to suppose, that the only medium of proof is payment of the surveyor’s fees. That is one, and it is for this reason, that it is an important act, denoting ownership: but this does not exclude all other acts tending to prove the same thing, — ownership;—and when the decisions referred to in the argument speak of payment of surveying fees indicating ownership, that is only put by way of example and illustration; and, in the last decided case on this subject, Cluggage v. Duncan’s Lessee, 1 Serg. & Rawle, 111, the court said, superintending the survey, or paying the surveyor’s fees, is sufficient to show the real owner. Now, the plaintiffs in error did prove, that the survey was made undér the direction of M‘Cullouch; and as that survey was immediately returned, the presumption is cogent, that he likewise paid the surveyor’s fees. The surveyor would not have returned it without payment of his fees, and who else would pay than M‘Cullouch, for no one else ever claimed the land; and what is still more convincing evidence of his ownership is, that only he and those claiming under him, have claimed and exercised the rights of ownership, and no one else to this day, for nearly forty years, has ever put in a claim to the location. I think the court properly rejected the application to strike out the plea of not guilty, with leave to give title in evidence, and substitute that of liberum tenemenium. The alteration did not give to the defendants any substantial meritorious advantage. He could have given the same evidence on the first plea, as the one desired to be substituted. It would give him the benefit of a reply, — the last word, and nothing more. This has constantly been refused. When non est factum and payment have been pleaded, the defendant would not be permitted to put the plaintiff to all the trouble and expense of proving the execution of the bond, and on the eve of trial to withdraw that defence, and stand on his affirmative plea, either at the common law or under any statute of amendment, or under the act of assembly, which was only intended to put it in the power of the defendant to have opportunity, even on the trial, to alter or add a new plea where the former ones would not reach the merits of his defence.
Judgment reversed, and a venire facias de novo awarded.