[SUNBURY, JUNE 25, 1829.]

PENN and another *against* PRESTON.

IN ERROR.

The words "*intended to be recorded,*" used in a deed, in reference to a power of attorney, under which the deed purports to have been made, imply a covenant on the part of the grantor to procure the power to be recorded within a reasonable time.

The covenant is not fulfilled in relation to lands in *Wayne* county, by recording the power in *Philadelphia* county, unless it be proved, that the grantor also had lands in *Philadelphia* county, to be affected by the power.

Possession of a farm draws to it the possession of the woodland belonging to it, though not enclosed; and, the party in possession may maintain trespass against a wrongdoer for destroying timber in such woodland.

The description, in a deed from the late proprietaries, of *William Penn*, as "*the eldest son, and heir at law,*" of *Richard Penn*, although it might imply, that *Richard Penn* had other children, is not such a defect of title, as to preclude their recovery of the purchase money of land sold by them, from one who has been in possession under such a deed for twenty-five or thirty years.

If the grantee has sustained injury, from trespasses and otherwise, in consequence of not being furnished by the grantor with muniments of title, which he was bound to furnish, the court, in an action for the purchase money, should not instruct the jury to find a verdict for the defendant, but to make a deduction sufficient to cover the injury sustained.

WRIT of error to the Court of Common Pleas of *Wayne* county.

The record, which was very voluminous, presented in substance the following case:

Before the revolution, the then proprietaries, by warrant and survey, had appropriated, as part of their proprietary tenths, a tract of land, containing two thousand two hundred and twenty-two acres, on the river *Delaware*, including the mouth of *Equinunk* creek, and called and known by the name of the *Equinunk* manor. This land appeared to have been occupied, and the tillable parts of it cultivated by *Preston*, the defendant, or by those holding under him, from about the year 1796. In or about the year 1801, *Preston* also erected a double saw mill on the tract, which he kept employed for about ten years. He had three dwelling houses on the land, but it seems they were occupied by his tenants, not by himself. There was no evidence by what right or claim *Preston* held the possession, except that *Doyle*, a witness, swore, that *Preston* once claimed the land as his own property, in partnership with one *Drinker*. But in the year 1812, *Preston* purchased the whole manor, and received a conveyance from *John R. Coates*, the attorney in fact of the *Penns*. The deed begins thus:—

"This indenture, made the 10th day of *March*, A. D. 1812, between the Honourable *John Penn*, of *Stoke Pogis*, in the county of *Berks*, in the united kingdom of *Great Britain* and *Ireland*, one

(Penn and another *v.* Preston.)

of the late proprietaries of *Pennsylvania,* by *John R. Coates,* of the city of *Philadelphia,* Esq., his attorney, duly constituted by letter of attorney, bearing date 26th of *March,* A. D. 1804, recorded at *Philadelphia,* and the Honourable *William Penn,* eldest son, and heir at law, of *Richard Penn,* Esq., deceased, who was the brother, and heir at law, of *John Penn,* deceased, the other of the said proprietaries of *Pennsylvania,* and *Juliana Catharina,* the wife of the said *William Penn,* by *John R. Coates,* their attorney, constituted by letter of attorney, bearing date the 5th of *March,* inst., intended to be forthwith recorded, of the one part, and *Samuel Preston,* of *Stockport,* in *Buckingham* township, in the county of *Wayne,* &c. gentleman, of the other part—Witnesseth, that in consideration of one dollar in hand paid, and of the further sum of two thousand seven hundred dollars, secured to be paid by bond," &c.

The deed contained a special warranty against the *Penns,* and all claiming under them. No part of the purchase money appeared to have been paid. This suit was brought upon the bond for the two thousand seven hundred dollars. The defence upon the trial was, that the title to the land was defective, and the muniments incomplete: that the power of attorney from *William Penn* and wife to *Coates,* never having been recorded in *Wayne* county, and the words *"intended to be forthwith recorded,"* amounting to a covenant, this covenant had been broken by the *Penns* very much to the injury of the defendant: that the words of the deed, describing *William Penn* as eldest son, and heir at law of *Richard,* proved conclusively, that other sons must be existing with an equal right to the estate: that the neglect to record the power of attorney in *Wayne* county deprived *Preston* of all means of protecting the land from intruders and trespassers: that the timber was cut down, fences destroyed, and the whole tract wasted and useless; and that he, *Preston,* was nonsuited, and had large costs to pay in numerous suits, brought by him against marauders upon the property. To support this defence, *Preston* showed the records of seven suits begun by him in the Court of Common Pleas of *Wayne* county, most of them brought in the year 1817; one of them in trespass against *William* and *Joseph White,* in which *Preston,* the plaintiff, was nonprossed for want of a declaration. Another suit was an ejectment against one *Dalton,* in which there was a nonpros, under a rule of court. Five of the suits were ejectments for the land, or parts of it, or trespass for cutting timber, or replevin for timber. These five suits appeared to be all against *William Lebar, Jacob Lebar, Daniel Lebar* and others. The first, and apparently the principal defendant in them all, was *William Lebar.* One of these five suits was pending at the time of trial. In the other four, the plaintiff, *Preston,* was nonsuited. There was proof, that the nonsuits were occasioned by want of the power of attorney, and *Preston's* inability to deduce his title. Sundry letters were read,

(Penn and another *v.* Preston.)

dated in 1818, 1819, and 1822, showing earnest and repeated applications by *Preston* to the agent of the *Penns* for the letter of attorney, or a well authenticated transcript of it, without success. Further, it was proved by *Preston,* that since 1812, trees had been cut down on the land, much mischief done, and fences destroyed: that thirty years ago, the place was in good order, but now desolate and wasted; saplings growing on the meadow (said one witness,) as big as his arm: that in high water, the rafts from up the creek went through the land and made roads over the fields; and, that as to timber, there was none left on the manor. *William Lebar,* a witness for the plaintiffs, denied the cutting the timber, except forty or fifty trees, for which, he said, he had permission from one of *Preston's* family. *William Lebar* also swore, and in this he was fully confirmed by one of *Preston's* own letters, that he, *Lebar,* had gone upon the land as tenant, with *Preston's* own assent. *Triple,* another tenant of *Preston,* swore, that the people landed their lumber, and placed their rafts on the farm, without any permission from *Preston,* but that he, the witness, gave some of them permission: that some of them paid him for this permission, and all promised to pay. There was evidence, that *Thomas Cadwalader,* the present agent of the *Penns,* had offered to the defendant a deed of confirmation of his title.

The plaintiff's counsel requested the court to charge the jury as follows:—

"1. That there is no covenant in the deed to the defendant for recording the power of attorney mentioned in said deed, in the county of *Wayne,* and that the intention to be forthwith recorded, mentioned in said deed, was complied with by recording in the county of *Philadelphia.*

"2. That the letters of attorney authorize a conveyance of land in the city and county of *Philadelphia,* as well as in every other county in the state, and were legally recorded in the city and county of *Philadelphia;* and that an exemplification of the powers of attorney from the records of that county, is evidence in any county in the state.

"3d. That the deed of confirmation, offered by *T. Cadwalader,* agent of the plaintiffs, would have supplied the place of the powers of attorney, and made the evidence of the defendant's title good from the date of his deed in 1812.

"4th. That the defendant's possession was sufficient to entitle him to recover against all who came in under him, or against a mere trespasser without colour of title."

The COURT charged the jury as follows, on the *first* and *second* points:—That the words "*intended to be forthwith recorded,*" amount to a covenant on the part of the grantors, that the power of attorney therein mentioned, should be recorded within a reasonable time, and in the proper office: That as there was no proof, either by the exemplification itself, or otherwise, that the grantors owned any real estate which could be affected by the power,

(Penn and another *v.* Preston.)

situate in *Philadelphia* city or county, getting the power recorded in the recorder's office of the city and county, was insufficient, and no compliance with the covenant."

The *third* point was answered by the COURT fully in the affirmative.

On the *fourth* point, the COURT charged, that the defendant's possession was sufficient to entitle him to recover against all who came in under him, and against a mere trespasser, who came in without colour of title, for trespasses done to his enclosures and improvements, whilst he was in actual possession; but for trespasses upon the tract of land not included within his enclosures and improvements, he could not recover without evidence of title."

The COURT further charged the jury, " that from the description of *William Penn*, in his deed to the defendant, as the eldest son, and heir at law of *Richard Penn*, it was plainly to be inferred, that *Richard Penn* left other children living at the time of his death, and who were still living at the time of the execution of the said deed, and who were severally entitled, under the laws of *Pennsylvania*, to an equal share with the said *William Penn*, of the land mentioned in the said deed." The court further instructed the jury, " that notwithstanding the offer of the plaintiffs, by their counsel, that a deduction should be made from the plaintiffs' demand, to the amount of the monies actually expended by the defendant in prosecuting his claims for the recovery of the land and trespasses thereon, and which occurred in consequence of the want of evidence of the powers of attorney, by virtue of which, the deed to the defendant was executed; and, their further offer, to receive a verdict, after such deduction, with the condition annexed, that no execution should issue until evidence of the powers of attorney should be produced to the court; if the jury believe, from the evidence, that the defendant has been, and still is kept out of possession of the premises, in consequence of a defect in his title; that the timber has been destroyed, the fences and other improvements ruined, and the whole land rendered of little or no value by persons unauthorized by the defendant; that the defendant could not prevent such general waste and mischief, and that he expended large sums of money in prosecuting for such injuries, and failed in consequence of his title being defective, then justice would seem to require, that their verdict should be in favour of the defendant."

The plaintiffs' counsel excepted to the charge, and now assigned the following errors:—

1. That the COURT erred in charging the jury, that the deed from the plaintiffs to the defendant, contained a covenant, that the power of attorney from *William Penn*, should be recorded within a reasonable time, and that the said covenant, if any, was not complied with by recording it in the county of *Philadelphia*.

2. That the COURT erred in their answer to the *fourth* point, particularly in saying, that the defendant could not recover, without

(Penn and another *v.* Preston.)

evidence of title, for trespasses committed on the tract of land not included within his enclosures and improvements, even against a trespasser without colour of title.

3. That the COURT erred in saying, that the title of the defendant was defective from the recital of *William Penn* as the eldest son, and heir at law of *Richard Penn*, and that this was a ground of defence in the present suit.

4. That the charge was incorrect and uncertain in this, that the COURT did not leave it to the jury to determine to what amount, if any, the consideration had failed; but assumed, that if the jury believed certain facts, then the failure of consideration, and the defendant's loss and damage were so great as to amount to a defence to the plaintiffs' whole demand, and entitle the defendant to a verdict.

*Conyngham* and *Mallary,* argued for the plaintiffs in error.

They cited the following authorities:—1 *Selw. N. P.* 463, 465. *Leazure* v. *Hillegas,* 7 *Serg.* & *Rawle,* 313. 3 *Stark. Ev.* 1436, 1437. *Miller* v. *Shaw,* 7 *Serg.* & *Rawle,* 129. *Cluggage* v. *Lessee of Duncan,* 1 *Serg.* & *Rawle,* 118. *Farley* v. *Lenox,* 8 *Serg.* & *Rawle,* 398. *Royer* v. *Benlow,* 10 *Serg.* & *Rawle,* 305. *M'Coy* v. *Dickinson College,* 5 *Serg.* & *Rawle,* 254. *Harker et al.* v. *Birkbeck et al.,* 3 *Burr.* 1563. *Mather* v. *Trinity Church,* 3 *Serg.* & *Rawle,* 511. *Stambaugh* v. *Hollabaugh,* 10 *Serg.* & *Rawle,* 365. 3 *Am. Dig.* 492, pl. 11 and 3. 2 *Selw. N. P.* 1226, 1227. *Hyatt* v. *Wood,* 4 *Johns. Rep.* 150. *Byrne* v. *Vanhoesen,* 5 *Johns. Rep.* 66. *Penn* v. *Penn's Executors,* 2 *Yeates,* 550.

*Dennison* and *Williston,* argued for the defendant in error, and cited, *Hyatt* v. *Wood,* 4 *Johns.* 150. *M'Coy* v. *Dickinson College,* 5 *Serg.* & *Rawle,* 254. *Miller* v. *Shaw,* 7 *Serg.* & *Rawle,* 129.

The opinion of the court was delivered by

TOD, J.—The court below decided rightly, I think, that the words, "*intended to be recorded,*" imply a covenant on the part of the grantors, to procure the letter of attorney to be recorded in a reasonable time. But was the recording in the office at *Philadelphia* sufficient? I think not, unless there was in the city or county of *Philadelphia,* real estate of the grantors to be affected by the power. *Leazure* v. *Hillegas,* 7 *Serg.* & *Rawle,* 313, and *M'Keen* v. *Delancy,* 5 *Cra.* 22, show, that a copy of a deed is evidence, when taken from the recorder's office of the county in which only a part of the land lies that is comprehended in the deed. But there was not shown to be any real estate in *Philadelphia* subject to the power; and, the existence of such estate, was not a fact of which there could be any sufficient legal notoriety, without some proof. The court below was clearly right throughout this first head.

2. But I think that the second allegation of error is sustained, and that *Preston,* for all the trespasses committed on his land, might well recover without producing any paper title whatsoever. He had been for twenty-five years in full possession. But all this length

(Penn and another *v.* Preston.)

of time was not wanted. Possession itself, is a title against a wrong-doer. I refer to the cases cited in the argument. See also 6 *Com. Dig. Trespass, B.* 2. Intruder on the king's possession may have trespass. In *Weidman* v. *Kohr,* 13 *Serg. & Rawle,* 22, DUNCAN, J., lays down the short conclusion of the law on this subject, "That where a plaintiff is in actual possession, the defendant cannot give a title in a third person in evidence. He may justify, by command of the owner, but such command is traversable." In this case, beyond a question, the possession was such as to comprehend the timber, though not enclosed. I hold, that there is no usage of the country, nor rule of the common law, nor any reason requiring a man to enclose his timber land; and, that for any possible purpose that can be named, the woods belonging to a farm are as well pro-tected by the law without a fence as with one. No doubt, there must be frequent cases, in which the production of title is necessary to show the extent of possession. But here there seems no pretence from the evidence, to say, that the boundaries of the *Equinunk* manor were unknown or doubtful. Besides, *William Lebar,* the principal defendant in the five suits, had been placed on the land by *Preston* himself, after he had purchased from the *Penns.* Clearly then, as to *Lebar,* no title could be wanted to support ejectment by a landlord against his tenant. But whether the landlord could re-cover in trespass, while *Lebar* was in the actual legal possession, is another matter.

3. The defect in *Preston's* title, arising from the description in the deed of *William Penn,* as eldest son, and heir at law. I think this assignment of error is also sustained. Certainly the terms, eldest son, and heir at law, might imply that he was not the only child. Some explanation of the meaning could, perhaps, easily have been given in the recital; for I believe, that during forty years past and more, the general practice has been, in proprietary deeds, to describe one or another of the grantors in the same language, as *eldest son, and heir at law.* We have all witnessed numerous objections to the form and substance of deeds. This objection is, perhaps, made for the first time in the present case. It is not even alleged, that there is any real difficulty of title. *Preston* has been in possession twenty-five or thirty years, and has never heard of any claimant in opposi-tion to *William* or *Richard Penn.* It would appear exceedingly hard to permit him to withhold the purchase money on account of a supposed flaw in the wording of a deed which he accepted and held for a long time without any objection.

As to the *fourth* assignment of error, it is not easy to discover any just and legal principle, upon which the damages sustained could be made to amount to the sum total of the purchase money of the land, even supposing all the points of defence to have been made out. A small expense, and any reasonable diligence, would have enabled *Preston* to obtain the original letter of attorney, or an au-thenticated copy, with evidence to sustain it, or proof of the con-

(Penn and another *v.* Preston.)

tents, if the instrument itself had been lost. And of the timber left on the tract by *Preston*'s saw mill, suppose one hundred, or two hundred, or even five hundred trees had been gleaned by *Lebar* and others, in the capacity of trespassers instead of tenants, and that no redress could be had by law for these outrages, solely for want of recording the power of attorney, yet, it would seem most unreasonable, that the whole manor should go to the defendant and his heirs for ever, to indemnify against a temporary loss of some of the products. Probably, the tenants have paid more attention to their own interest than to the interest of their landlord. Mr. *Preston* knew when he purchased, as well as he does now, that land at the outlet of the *Equinunk*, must continue subject to the little annoyances of rafts and raftsmen; and, that the fences must suffer by high water, or otherwise. He ought also to have known, and probably did know, that law suits neglected, will produce costs and vexation about as readily as a meadow neglected will produce saplings; and, that there must be many losses which the vendor of land can never be justly made to pay for.

Judgment reversed, and a *venire facias de novo* awarded.