THOMPSON BROOKS, Appellant, *v.* ZACHARIAH BRUYN, Appellee.

APPEAL FROM WARREN.

The visible and exclusive appropriation and use of a tract of land claiming the whole under color of title, or a deed purporting to convey the whole, is, in law, an actual possession of the entire tract, except so far as adverse possession may exist.

Whoever has the title to unoccupied land is deemed to be in possession for all purposes, in defense or protection of his rights.

Whoever is in the actual possession of land claiming the fee, is presumed to have it, until the contrary appears, and may maintain an action for an invasion of his possession against any one, but him who has the legal title or right of possession.

Actual possession of land may arise in any of the ways of improving it, which show an intention to appropriate it to a useful purpose, which, in their nature, in connection with the claim of right, indicate an exclusive use and control of the property, and this may be extended to woodland, although disconnected, if used for farm or homestead purposes.

An occupation of land in such manner as to inform the neighborhood of its exclusive appropriation, will carry the possession to the extent of the title.

Forcible entry and detainer cannot be maintained against one who has taken possession lawfully of previously unoccupied land, claiming title, by another who has invaded that possession, also claiming title to the land, especially if the first occupant entered with the intention of making useful improvements, and has shown an honest purpose.

Title is immaterial, in a proceeding for forcible entry and detainer, except to show the extent of the possession. Deeds may be read in evidence to prove boundaries or extent of possession.

THIS cause was tried at the March term, 1857, of the Warren Circuit Court, THOMPSON, Judge, presiding.

WEAD and WILLIAMSON, for Appellant.

GOUDY and HARDING, for Appellee.

SKINNER, J. This was an action of forcible entry and detainer brought by Bruyn against Brooks, to recover possession of the N. W. 9, T. 9 N., range 2 W., in Warren county.

The plaintiff proved that on the night of the first day of July, he went on the land in controversy with some men and two teams loaded with lumber; that they got there about ten or eleven o'clock at night; left the lumber on the land and went to a neighboring house and slept that night. Early the next morning at daylight (July 2d), he went on the land near one corner and built a small shanty of boards and posts about eight by twelve feet, which he finished about noon on same day, and put a carpet sack and bed in the shanty. The plaintiff continued to sleep in the shanty for a few nights, and at the same time built a small yard or pen, with rails, near the shanty, and a

few days after commenced building a dwelling house upon the premises, which he afterward completed and put a tenant in.

That plaintiff, by himself and tenants, have continued in the uninterrupted and peaceable possession of the shanty, pen and dwelling house, and yard attached thereto, ever since the 2d day of July, 1856; that a day or two before the 2d day of July, 1856, plaintiff run some furrows with a plow partly around the premises. That the quarter section in dispute was not inclosed in any manner, but was open, vacant prairie, and has never been inclosed. That the dwelling house was finished on the 8th or 10th of September, 1856, and plaintiff then moved his bed from the shanty, where it had been since July 2d, to the house, and took possession. That soon after going into possession as aforesaid, on the 2d day of July, A. D. 1856, he broke forty or fifty acres of prairie that joined a small part broken by defendant, on same premises. That when he went on said premises there was one or two acres of land broke or plowed thereon, which had been broken before, and also a rail pen partly finished, for the purpose of keeping hogs in, but plaintiff did not go on to part broke or plowed.

That the rails were hauled there by Nathaniel Bruyn, plaintiff's father, in the summer of 1855, and partly erected into a pen, and left there for one Coates to finish it, if he wished to use it. That he made an arrangement with Coates to use it if he wanted it (which he never did), to keep hogs in. That Nathaniel Bruyn took the rails there, and partly erected the pen there, for the purpose of taking possession of the quarter section of land.

That while plaintiff was putting up his shanty on the 2d day of July, 1856, in the forenoon of that day, some men came on to another part of the same quarter section with some logs and teams, and said they would put them on the land in the name of the defendant. They continued thereon, and put up a log stable; made a yard and crib of rails, and on the same day hauled a dwelling house, with a family in it, on the same tract of land, which improvements have been occupied ever since by Cincinnatus Mumford and his family, who were in the house then, under the permission of defendant, and for the purpose of keeping possession of the premises.

The plaintiff then offered a deed from Nathaniel Bruyn to Zachariah Bruyn, for said premises, dated June 26th, 1856. To the introduction of which the defendant objected, but the objection was overruled, and the deed read in evidence, to which the defendant's counsel excepted.

Plaintiff also proved that defendant, the first week of September, 1856, sowed part of the land, broken by plaintiff, with wheat, and while the defendant was sowing said wheat the

plaintiff requested him to desist, and claimed the land as his own, but the defendant denied the plaintiff's claim, and claimed the land for himself, and then offered to purchase the plaintiff's claim, which plaintiff refused to sell.

The plaintiff, on the 10th day of September, 1856, and before the commencement of this suit, served a written notice on defendant, demanding possession of the premises.

The defendant then proved that he went on the quarter section of land in controversy on the 25th day of June, 1856, with his team, under claim of title, and broke up between one and two acres of the land for the purpose of taking possession of it. That, as above stated, on the morning of the 2d of July, 1856, he hauled logs on the land at a different place from where the plaintiff was, and built a small cabin or stable thereon, and a pen, and also on the same day hauled a small frame dwelling house thereon, with a family in it, which family has continued to reside therein ever since.

The defendant then read, in evidence, a deed from J. H. Baker, to him, dated December 24th, 1855, to the premises in controversy.

The defendant then offered to prove a regular patent title to the premises in controversy by a regular chain of conveyances from the United States to himself, but the court refused to hear the evidence, and decided the evidence inadmissible, to which the defendant excepted.

The cause was tried by jury and a verdict returned against the defendant of guilty as charged in the complaint, which verdict the court refused to set aside.

The entry of Brooks, on the 25th day of June, under his deed to the whole tract from Baker, and breaking up one or two acres were, *prima facie*, an appropriation of the land according to the description contained in his deed; and if he did so, *bona fide*, for the purpose of using the land by actual occupation in such manner as would be exclusive and open to the observation of others, and had not abandoned his possession at the time of the entry of Bruyn, some five days after, the entry of Bruyn was an invasion of his possession. The visible and exclusive appropriation and use of a tract of land, claiming the whole under color of title, or a deed purporting to convey the whole, is, in contemplation of law, an actual possession of the entire tract, except so far as adverse possessions may exist. *Jackson* v. *Oltz*, 8 Wend. R. 440; *Farnnan* v. *Beal*, 14 Ill. R. 244; *Furney* v. *Chamberlain*, 15 ibid. 271; *Davis* v. *Easely*, 13 ibid. 192; *Ellicott* v. *Pearl*, 10 Peters R. 9.

Where land is unoccupied in fact, he who has the title is deemed in possession for all purposes of protecting and

defending his right; and he who is in the actual possession of land claiming the *fee*, is presumed, until the contrary appears, to have the *fee*, and may maintain an action for an invasion of his possession against any one but him who has the legal title, or right of possession. 4 Kent's Com. 120; *Van Renssellear* v. *Radcliff*, 10 Wend. R. 639; *Van Brunt* v. *Schenck*, 11 Johns. R. 377, 385; *Rickard* v. *Williams*, 7 Wheaton R. 59; *Mason* v. *Park*, 3 Scam. R. 532; *Davis* v. *Easely*, 13 Ill. R. 192, 198.

Actual possession of land may arise in different ways, as by entering upon and improving the same with the intention of appropriating the land to an ordinary, or useful purpose — agricultural or other — which, in their nature, in connection with the claim of right, indicate an exclusive use and control of the property; by erecting buildings; by breaking prairie for cultivation; by inclosure; by opening shafts for raising coal, or ore, quarries for obtaining rock, and using them to the exclusion of others; by the use and control of timber land belonging to a farm or homestead, although disconnected therewith, for ordinary supply of wood or timber for such farm or homestead. *Sawyer* v. *Newland*, 9 Vermont R. 383; *Machin* v. *Geortner*, 14 Wend. R. 239; *Penn* v. *Preston*, 2 Rawle 14.

It is impossible to specify the particular acts, under every condition, which would constitute actual possession of land, as against a stranger, or trespasser. They are as various as the uses to which land is adapted.

As a general rule, it is sufficient if the land is appropriated to individual use in such manner as to apprise the community, or neighborhood of its locality, that the land is in the exclusive use and enjoyment of another, and the possession will be deemed coëxtensive with the title under which the occupant claims. There is no reason why a party having entered upon a tract of land under claim and color of right, and commenced improving the same with the intention of completing the improvement for actual use, while that intention continues and for a reasonable time for convenient use by cultivation or otherwise, should not be protected in his possession, as against a trespasser, to the extent of the entire tract entered upon and to which his color of right extends. What is, here said, is in reference to the facts of this case and the presumptions of intention arising out of them.

It is not to be supposed that an individual can, under claim and color of title, by some trifling improvement, appropriate to himself a large and unusual body of land, or that by entering upon a tract and doing some useless thing upon the land, as erecting a pen, sham building, leaving a few rails or tim-

bers, with the intention thereby of excluding others, and not of permanently improving and using the land, could maintain an actual possession; or that possession by entry and improvement may not be destroyed by *laches*, or acts clearly evincing a change of purpose and an abandonment of the land. This action is based upon the alleged invasion of the plaintiff's actual possession, and if Brooks was in possession (in other words, if it was Brook's possession), at the time of the entry of Bruyn, the latter invaded that possession, and cannot maintain this action. In such case, Brooks has but continued, as against Bruyn, his lawful possession; and if, in doing so, he has necessarily and peaceably appropriated the labor of an intruder, the law will afford no remedy. On the 25th day of June, Brooks, under his deed, entered and broke up one or two acres; some five days after, Bruyn entered, under his deed, and commenced, in the night, erecting a shanty; and on the next day both continued their improvements, and each afterward, continued to claim possession of the entire tract. It is reasonable to conclude, and it will be presumed, until the contrary appears, that the prior entry of Brooks was with the intention of proceeding to the consummation of useful improvements, and that that intention existed at the time of the entry of Bruyn. The hauling of some rails and part erection of a pen with them on the land in 1855, by *Nathaniel* Bruyn, cannot affect this case, for if Brooks invaded any one's possession, it was that of Nathaniel, and not of the plaintiff in this suit, to whom Nathaniel afterward conveyed. It is well settled that in this action title is immaterial, except for the purpose of showing the extent of possession. Deeds, under which the party claims, may be read in evidence not for the purpose of proving title to the land, but the boundaries, or extent of possession. *Croff* v. *Ballinger*, 18 Ill. R. 200; *Davis* v. *Easely*, 13 ibid. 192.

Judgment reversed and cause remanded.

*Judgment reversed.*