JULIUS LANCEY

*v.*

ROBERT T. BROCK.

*Filed at Mt. Vernon September 27, 1884.*

1. POSSESSION—*of part, under color of title of whole tract.* The visible and exclusive appropriation and use of a part of a tract of land, claiming the whole under color of title, is in law an actual possession of the entire tract, except so far as there may be adverse possession.

2. This rule only applies, however, where the deed purports to convey the whole. The possession does not extend beyond the color of title, and hence where a deed only purports to convey a particular interest in land, it is not evidence of possession beyond that interest.

39—110 ILL.

3. Where it is impossible to say what interest, if any, passes by a deed, the grantee or holder can not make it available to extend his possession of a part of the premises over the whole.

4. SAME—*to show title to land.* Where possession alone is relied on as evidence of title to a tract of land, it must be an actual, not a merely constructive, possession. Possession *per se* is evidence only of the mere fact of present occupancy by right, and the facts and collateral circumstances may be looked to as affording evidence whether or not the possessor claimed a fee. Abandoning possession, ceasing to pay any taxes, and allowing others to enter and occupy, will repel any presumption of a claim of title in fee, and raise a presumption that the claim of the former occupant was less than a fee, and had terminated.

5. CONVEYANCE—*sufficiency of description.* A deed described the land as "sixty-seven acres, part of claim 1096, survey 117." Survey 117 contained one hundred and thirty-four and a fraction acres: *Held,* that the description was fatally defective, it failing to describe definitely any specific tract; *held, also,* that it could not convey an undivided half of survey 117, for the reason that an undivided half of the north-west half of the undivided half of a tract of land describes nothing tangible, either in quantity or interest.

APPEAL from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

Mr. CHAS. W. THOMAS, and Mr. FRANK B. BOWMAN, for the appellant:

Mere actual possession of land is not sufficient evidence of title. It must be accompanied by claim of title in fee to sustain a recovery.

The deed from Piggott to plaintiff does not show claim of title. It does not purport to convey or even describe the land in controversy.

Survey 117 is six miles long and one arpent wide, and runs north-west from the bluff. It contains one hundred and thirty-four acres. This is divided equally into the north-west half and the south-east half, each containing sixty-seven acres. The deed purports to convey, not survey 117, nor the north-west half thereof, nor any part of the north-west half of the survey, but an interest in the north-west half of a certain part of that survey, to-wit, of that part thereof of which one St. John died seized, etc.

Plaintiff's alleged actual possession by Porter in 1855, for one year, stands unconnected with any claim of title in fee. The record also shows that ever since 1860 Piggott was in actual possession of a part of the north-west half of the survey, claiming the whole half under a tax deed. Bowman & Griswold succeeded with continuous, actual and exclusive occupation.

Messrs. G. & G. A. KOERNER, for the appellee:

We do not claim to show a paper title in this case, and do not care about the recitals in Piggott's deed. He did convey the half of the north-west half of survey 117, to the plaintiff. This deed of itself is *prima facie* evidence of title, or is at least color of title, under which to take and hold possession.

Plaintiff's prior possession of a portion of the premises under color and claim of title, in the absence of any evidence to the contrary, is sufficient proof of title in fee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was ejectment by appellee, against appellant. The land sued for is described in the declaration as being "the undivided one-fourth of that part of survey 117, in the common fields of Cahokia, which is bounded north-west by Tenth street, in the city of East St. Louis, north-east by the tract known as the 'Ames tract,' south-east by that part of said survey now occupied by Charles Gain, and south-west by survey 116 of said common fields." Appellee claimed title in fee simple. Upon the trial appellee read in evidence, to maintain the issue on his part, a deed dated December 13, 1854, whereby Isaac N. Piggott remised, released and forever quitclaimed to him, "one equal and undivided half of the right, title and interest which was of John L. St. John, at the time of his decease, to the north-west half of a certain

piece of land in claim No. 1096, and survey No. 117, in the common field lots of Cahokia, in the county of St. Clair, and which, by deed of William S. Thomas, administrator of the said John L. St. John, deceased, made the 29th day of January, 1848, and duly recorded in said county of St. Clair, was conveyed to said Isaac N. Piggott, containing sixty-seven acres, more or less." Appellee then also introduced evidence tending to show that Piggott was in possession of a part of the north-west half of survey 117 at the time he made this deed, claiming the whole, and that he himself took possession of it under this deed, and exercised acts of ownership over a part of the north-west half of survey 117; but, as we understand the evidence, it does not show an actual *possessio pedes* of the land sued for by Piggott, at the time he executed the deed to appellee, nor by appellee since.

It is familiar doctrine that the visible and exclusive appropriation and use of a part of a tract of land, claiming the whole under color of title, is, in law, an actual possession of the entire tract, except so far as there may be adverse possession. (*Keith et al.* v. *Keith,* 104 Ill. 402, and authorities there cited.) But this only applies where the deed purports to convey the whole. The possession does not extend beyond the color of title, and therefore where a deed only purports to convey an interest in land, it can be evidence of no possession beyond that interest, because it is to that extent only that such deed is color of title. (*Busch* v. *Huston,* 75 Ill. 343; *Bride* v. *Watt,* 23 id. 507.) The rule is thus stated in Sedgwick & Wait on Trial of Titles to Land, sec. 768: "So, also, the extent of the adverse constructive possession will be limited to the amount described or defined, by whatever constitutes the claimant's color of title. There can be no adverse possession, whether actual or constructive, where there has been no definite claim to it. The deed, or whatever writing constitutes the color of title, must at least purport to include the land claimed, upon the general principle that a deed can

not operate as color of title so as to have effect beyond the estate which it professes to pass." And this is sustained by *McRae* v. *Williams*, 7 Jones' Law, (N. C.) 430; *McEvoy* v. *Lloyd*, 31 Wis. 142; *Crary* v. *Goodman*, 22 N. Y. 170.

It is impossible, here, to say the deed from Piggott to appellee conveyed any interest in the land sued for, without knowing what was the "interest which was of John L. St. John, at the time of his decease, to the north-west half of a certain piece of land in claim No. 1096, and survey No. 117, in the common field lots of Cahokia, in the county of St. Clair," etc. If that interest was a definite tract in that body, described by metes and bounds, then the undivided half of the north-west half of such tract was conveyed by Piggott to appellee; and if, instead of being a definite tract, it was an undivided interest,—some aliquot part of the whole amount,—as, an undivided one-half, one-eighth, or one-sixteenth, then it was the undivided half of the north-west half of that undivided interest only that was assumed to be conveyed by Piggott to appellee. But the court can not take judicial notice of what is the fact in this respect, and appellee seems not to have deemed it necessary to introduce any evidence throwing light upon the subject. Appellant, however, did introduce evidence showing what was St. John's interest in said survey 117. By that evidence it is shown that the deed of William S. Thomas, administrator, to Isaac N. Piggott, executed on the 9th of January, 1848, referred to in the deed from Piggott to appellee, purported to convey "part claim 1096, survey 117, containing sixty-seven acres." It is also shown by that evidence that St. John, in his lifetime, had two deeds to land in survey 117,—one by William C. Kinney, assignee in bankruptcy of Narcisse Pensoneau, dated April 20, 1843, purporting to convey "sixty-seven acres, part of claim 1096, survey 117;" the other a tax deed, dated January 9, 1845, purporting to convey to John L. St. John "sixty acres east side of claim 1096, survey 117." Evidence of a negative character

was also given, to the effect that John L. St. John had no other claim to land in survey 117, and that Narcisse Pensoneau, at the time he was adjudicated a bankrupt, had no interest in any land in survey 117.

It was agreed by the parties, upon the trial, to be considered as in evidence, that United States survey 117 contains one hundred and thirty-four and a fraction acres; that it is a strip one arpent wide and six miles long, extending from the bluff, north, forty-three degrees west, to Cahokia creek, and is claim 1096 of the Cahokia common fields.    .

It is manifest that it is impossible to sustain the judgment below by referring St. John's interest to his tax deed; and, in our opinion, the deed from Kinney, assignee, to him, must be equally unavailing.    Sixty-seven acres, in a larger tract of one hundred and thirty-four and a fraction acres, describes definitely no specific tract.    It may as well be in the southeast half, or equi-distant from the middle, or in any other part of the survey, as in the north-west half.    But if it may be said the deed should be held as conveying an undivided interest in the proportion as sixty-seven acres bear to the number of acres in the whole tract,—thus, $\frac{67}{134}$, or one-half,—it is equally ineffective, for the undivided half of the north-west half of the undivided half of a tract of land describes nothing tangible, either in quantity or interest.    If there were anything in the evidence to confine St. John's interest to the north-west half of the survey, it would be different; but there is not.    We must either regard it as sixty-seven acres unlocated in any part of the tract, or an aliquot part of the whole tract, and that conveyed to appellee is the undivided half of the north-west half of that tract, or aliquot part.

If, however, the deed be disregarded, and possession alone be relied upon, we think the evidence insufficient.    When possession alone is relied upon as evidence of title to a tract of land, it must be an actual, not a constructive, possession. *Webb* v. *Sturtevant,* 1 Scam. 181; *Illinois Mutual Fire Ins.*

*Co.* v. *Manufacturing Co.* 1 Gilm. 266; *McClellan* v. *Kellogg,* 17 Ill. 498; *Turney* v. *Chamberlain,* 15 id. 271.

The evidence on behalf of appellee is not sufficiently clear and satisfactory that there was an actual prior, exclusive possession of this identical property in appellee, and there is evidence directly to the contrary. Appellee testifies, generally, that he leased to a man by the name of Porter, in 1855, and he made some improvements on the land; but he adds: "I do not know whether Porter cultivated any of the land, but he cut timber, and perhaps put some in cultivation." This is very uncertain, and may have amounted to no more than acts of trespass. It is not pretended that the improvements extended over the land in controversy, and he fails to show on what part timber was cut, or how frequently, or in what quantity. He says he made a pasture on the land himself, and he adds: "I think the pasture was, possibly, a part of it, on the land in suit here." Clearly, this is not sufficient proof of actual possession.

But apart from this view, rejecting the deed as evidence of title to this land, it does not appear how appellee rightfully got possession, or that he at the time actually claimed to be the owner in fee. In *Ricard* v. *Williams,* 7 Wheat. 105, the court, per Mr. Justice STORY, delivering its opinion, said: "Undoubtedly, if a person be found in possession of land claiming it as his own in fee, it is *prima facie* evidence of his ownership and seizin of the inheritance. But it is not the possession alone, but the possession accompanied with the claim of the fee, that gives this effect, by construction of law, to the acts of the party. Possession, *per se,* evidences no more than the mere fact of present occupation by right,—for the law will not presume a wrong,—and that possession is just as consistent with a present interest, or a lease for years or for life, as in fee. From the very nature of the case, therefore, it must depend upon the collateral circumstances what is the quality and extent of the interest claimed

by the party, and to that extent, and that only, will the presumption of law go in his favor; and the declarations of the party while in possession, equally with his acts, must be good evidence for this purpose." To like effect, see, also, *Bedell* v. *Shaw*, 59 N. Y. 50; *Doe* v. *West*, 1 Blackf. (2d ed.) 134; 1 Smith's Leading Cases, (7th Am. ed.) 661; Sedgwick & Wait on Trial of Titles to Land, sec. 718. Of course, if there be no evidence of the declarations of the party in the prior peaceable possession of lands, nor of collateral circumstances, nor otherwise, tending to show that such possession is not that of a claimant in fee, the presumption, as against a subsequent wrong-doer, is, that he claims in fee. 3 Phillips on Evidence, (Hill, Cowen & Edwards' notes,) 595; *Burt* v. *Penjand*, 99 U. S. 180.

But the collateral circumstances here in evidence do not seem to prove that appellee must have claimed a fee. The instances of dominion claimed to have been exercised by him over the property are, in substance, only those to which we have alluded, and, so far as we have been able to learn the dates from the record, his renting to Porter was in 1855, and his pasturing a part of the land (if his pasture, in fact, included any of it,) was in 1861. He does not claim to have been in the actual possession of the land, as we understand the evidence, after 1861, nor does he show that his possession was terminated wrongfully. There is, on the other hand, evidence in the record, uncontradicted, that on and prior to the 16th day of January, 1865, Piggott was in the peaceable possession of the premises, claiming as owner under a tax deed, and on the last named day contracted to sell them to Bowman & Griswold, and thereupon put them in peaceable possession. There is no proof of any payment of taxes by appellee at any time, and there is proof of continued possession and payment of taxes since January 16, 1865, by and under Bowman & Griswold. This seems to repel, effectually, any presumption of a claim of title *in fee* in appellee, and to

raise the presumption that whatever title he may have had was less than a fee, and terminated prior to the contract of purchase of Bowman & Griswold.

The rulings below were not in harmony with the views here presented, and the judgment must, therefore, be reversed, and the cause remanded.

*Judgment reversed.*