ST. LOUIS, ALTON AND TERRE HAUTE RAILROAD CO.

*v.*

MARY NUGENT.

*Filed at Mt. Vernon June 19, 1894.*

1. LIMITATIONS—*extent of possession under color of title—presumption.*
One entering into possession of a lot under a deed will be presumed
to have been in possession, to the extent and according to the pur-
port of the deed, from the time of entry, unless the circumstances
show that the claim of title did not extend to, or that there was
adverse possession of, some portion of such lot.

2. SAME—*what will constitute possession.* While it is impossible to
specify the acts which would, under every condition, constitute
open and visible possession of land, the general rule is, that it is
sufficient if the land is appropriated in such manner as to apprise
the community that the land is in the possession and enjoyment of
the person claiming it.

3. SAME—*possession of railroad right of way.* In the case of the
right of way of a railroad within the limits of an incorporated city
or village, where it cannot be enclosed, or occupied by permanent
structures, if there have been unequivocal acts of dominion and
control by the company over the land, such as are sufficient to give
notice of the claim of ownership, this will amount to open, notori-
ous and visible possession.

APPEAL from the City Court of East St. Louis; the
Hon. B. H. CANBY, Judge, presiding.

Messrs. TURNER & HOLDER, for the appellant.

Mr. M. MILLARD, for the appellee.

Mr. JUSTICE SHOPE delivered the opinion of the court:

This case was before us at a former term, and will be
found reported as *East St. Louis and Carondelet Railway Co.
v. Nugent*, 147 Ill. 254. The plaintiff in the declaration
upon which this cause was tried, claimed title in fee to a
part of lot 6, in block 29, of the platted town of Illinois,
(now part of the city of East St. Louis,) commencing at
a point on the southern line of said lot twenty-four feet
and three inches from the most southern corner thereof,

thence along said line of said lot thirty-five feet and nine inches to the westernmost corner thereof, thence along the western line of said lot one hundred and thirty feet, thence in a straight line to the place of beginning. The peculiarity of description will be understood when it is stated that the side lines of the lot are run north forty-seven degrees east,—that is, the lot is so platted that the lines run at practically an angle of forty-five degrees from north and south and east and west courses. The lot at what is practically its south-west end, fronts on Brady street, which is laid out practically from north-west to south-east.

The plaintiff, to maintain the issues on her part, introduced in evidence a deed from Jane E. Lewis and others to plaintiff, conveying lots 6 and 7, in block 29, of the town of Illinois, county of St. Clair, etc., dated October 3, 1862, and also a deed from the master in chancery of St. Clair county to the grantors in the foregoing deed, dated June 30, 1850. Plaintiff then proved that the lots were, at the time she acquired title, vacant, and that she took possession and built a house on the lots, as owner, in 1866, and built a fence enclosing all of lot 7 and part of lot 6. A portion of lot 6 was not included within the enclosure, the fence having been built, originally, where it now stands. This evidence, when considered in the light of the facts now shown, shows that the fence was built practically twenty-five feet, or twenty-four feet and three inches, in from the south corner of the lot, and ran on a straight line, striking the north-west side of the lot at a point one hundred and thirty feet from the west, or most westerly, corner of the lot. The house built in 1866 was burned, and the plaintiff, about 1868, erected a house upon each of said lots. It appears that she entered into possession, made the improvements mentioned, and has continued in the occupancy of lot 7, and a part of lot 6 embraced within her enclosure, as owner of the lots, under the deeds before mentioned.

Lot 6 is sixty feet wide and one hundred and forty feet long, and it will be observed that a triangular piece or part of lot 6, described as commencing at a point thirty-five feet and nine inches south-east from the west. or most westerly, corner of said lot, and running thence north-west to said corner, thence north-east on the side line of said lot, and thence in a straight line to the place of beginning, has at no time been in the actual possession of the plaintiff, and it is sought to extend her possession, taken in 1866, of part of said lot 6, to all of the lot.

It is, says Mr. Justice Scholfield in *Lancey* v. *Brock*, 110 Ill. 609, familiar doctrine that the visible and exclusive appropriation of a part of a tract of land, claiming the whole, under color of title, is, in law, an actual possession of the entire tract, except so far as there may be adverse possession. (See, also, *Brooks* v. *Bruyn*, 18 Ill. 539; *Davis* v. *Easley*, 13 id. 192; *Prettyman* v. *Wilkey*, 19 id. 235; *Coleman* v. *Billings et al.* 89 id. 183.) And he who is in the actual possession of land claiming in fee. is, until the contrary appears, presumed to be the owner, and may maintain an action for the invasion of his possession against any one not seized of a paramount title. (Cases *supra.*) It would therefore seem clear that the plaintiff must be presumed, from the time of her entry upon the lot, to have been in possession thereof to the extent and according to the purport of her deed, unless the circumstances show that her claim of title did not extend to the portion of the lot in controversy or that there was adverse possession, and in the absence of such showing, that she would be entitled to recover the possession against an intruder not possessed of the fee, unless her right of entry has been tolled by *laches* in asserting it.

The defendant offered in evidence conveyances showing that it had succeeded to all the right. title and interest, property, lands and right of way, of the Belleville and Illinoistown Railroad Company, and thereupon offered

in evidence proceedings in condemnation by the latter company, determined November 24, 1855, for the condemnation, etc., of said lot 6, and other lots, which was, on objection by the plaintiff, excluded. The defendant also offered a deed conveying the right of way, etc., of the Belleville and Illinoistown Railroad Company to the defendant, which was likewise excluded. In the view we take it will be unnecessary to consider the errors assigned questioning the rulings of the court in excluding such evidence, for the reason that, independently of whether the defendant was shown to have been seized in fee or the deed offered was color of title, we are of opinion that the plaintiff, upon the facts proved, cannot recover.

It appears, and is not controverted, that as early as 1863,—three years, at least, before the plaintiff took possession,—the track of the Belleville and Illinoistown railroad ran across the south-west corner of said lot 6. Indeed, the possession of five or six feet of said lot has been open and notorious, under claim of title, through said condemnation proceedings, since 1855. It is also shown that, in 1856, east of defendant's track and twenty odd feet away was another railroad track, at that time operated by the Ohio and Mississippi Railroad Company. The latter track was removed in 1859 or 1860, but the embankment upon which the track rested, across the lot, remained, and in 1866, when the plaintiff enclosed said lot 6, she built her fence near to and east of the embankment which had been occupied by the Ohio and Mississippi railway, the distance from where the track had been, to her fence, being six or seven feet. At that time the land between the track now owned by the defendant, and the fence of the plaintiff, was unoccupied, except by the earth and *debris* that had been placed there by the railroad company. It appears that the surface of the ground had been raised between two and three feet, by being filled in so as to make the road-bed. The plaintiff,

from that time until August, 1892, practically twenty-seven years, failed to assert any claim or title or interest in the strip of land lying west of her fence, now in controversy.

The *locus in quo* is and was within the limits of an incorporated village or city, where the railroad company was not required to fence its right of way. From 1859 or 1860 the part of the lot in question, while the public have been permitted to travel over it, has been in the use, for all purposes for which it was required, by the railroad company, under claim of ownership. The evidence shows that it has been treated as a part of its right of way, and used by the railway company for all the purposes of which it was susceptible. It is shown that since 1863, at any rate, it is higher than the adjacent ground by reason of the railroad embankment; that the embankment is an entirety, and extends to and against the fence of the plaintiff, and that the defendant and those under whom it claims have kept and maintained the same; that in 1872 the defendant leased to the East St. Louis and Carondelet Railroad Company a portion of this strip lying east of its own tracks; that the latter company went into possession and has since continuously occupied it; that prior to 1872, and after the removal of the Ohio and Mississippi railway tracks, it was used by the railway company in the repair of its road, and for the convenience of its employees in depositing material, operating its road and maintenance of its road-bed. This is shown certainly as far back as 1863. It cannot be doubted, when this evidence is all considered, that the use and occupation of this strip of land by the railway companies for more than twenty years were so far open and visible that the plaintiff and others were bound to take notice that the railway company was in occupancy claiming to own the land.

As already seen, if the plaintiff intended to assert title to the residue of the lot not included within her en-

closure, there was nothing save the filling in to the depth of two or three feet to have prevented her, in 1866, from extending her fence to within five or six feet of the most westerly corner of the lot, when she would have come in contact with the track of the railroad. Instead of doing so she stopped at the embankment and built her fence parallel with it, so as to exclude from her enclosure the land in controversy. For more than a quarter of a century before the bringing of this suit she kept and maintained her fence where it was originally built, without any assertion of right or pretense of claim to the land lying west of it, and acquiesced in the control and use of the same by the railroad companies. A farther significant fact is, that until the change in the mode of assessing railroad rights of way, in 1874, the lot was assessed in separate parcels, although the division was not always the same, the railway company paying upon the south-west part of the lot and plaintiff upon the residue. Thus from 1871 to 1874 the plaintiff paid taxes on the north-east two-thirds of lot 6 and the railway company on the south-west one-third part of said lot.

We need not pursue the investigation. It is impossible to specify the particular acts which, under every condition, would constitute open and visible possession of land. As said in *Brooks* v. *Bruyn, supra,* as a general rule it is sufficient if the land is appropriated in such manner as to apprise the community, or neighborhood of its locality, that the land is in the possession and enjoyment of the person claiming it. In the nature of things, the right of way of a railway company within the limits of an incorporated city or village cannot be enclosed as a lot or farm might be, nor occupied by permanent structures or improvements, but must be left free for approach to the tracks, and for such other purposes as the exigencies and necessities of the railroad company, in the operation and maintenance of the railway, may require. And, therefore, if there have been such unequivocal acts

of dominion and control over the land as are sufficient to give notice of the claim of ownership, it will amount to open, notorious and visible possession. *Penn* v. *Preston*, 2 Rawle, 14; *Davis* v. *Easley, supra; Pearson* v. *Herr*, 53 Ill. 144; *McLean* v. *Farden*, 61 id. 106; Wood on Limitations, 503; cases *supra*.

Without pausing to determine whether the circumstances show that the plaintiff did not enter upon a part of lot 6, claiming the whole, or whether the railway company to whose rights the defendant succeeded was not, at the time of such entry, in the actual possession of all of the land in controversy, we are of opinion that the defendant was shown to have been in the actual possession of the same for over twenty years prior to the bringing of this suit. In this view it will be unnecessary to discuss the propriety of the propositions of law asked by the defendant and refused by the court.

We are of opinion that the court below erred in its finding, and its judgment will be reversed and the cause remanded for further proceedings.

*Reversed and remanded.*