MUNROE *v.* PERE MARQUETTE RAILWAY CO.

1. ADVERSE POSSESSION—BURDEN OF PROOF UPON CLAIMANT.

In an action of ejectment, where the defense is title by adverse possession, the burden of proof is upon defendant to establish all the incidents necessary to make its possession adverse as a matter of law.

2. SAME—PERMISSIVE ENTRY—PRESUMPTIONS.

The presumption that defendant's original entry upon land was permissive only because of the friendly relations between it and the manager of plaintiffs' predecessor in title may not be indulged, where the record shows that the original entry was at least as early as 1877, while said predecessor had no title or interest until 1878.

3. SAME—EVIDENCE—RECOGNITION OF SUPERIOR TITLE.

A recognition of the title of the true owner after the bar of the statute has run, so as to complete the title of the adverse claimant, will not alone defeat the title so acquired, but such recognition is evidence to be considered in determining whether in fact the prior possession of the adverse claimant was in fact adverse or a possession in subordination to the title of the true owner.

4. SAME—EFFORT TO QUIET TITLE BY ADVERSE CLAIMANT NOT RECOGNITION OF SUPERIORITY OF RECORD TITLE.

If the effort by the adverse claimant to secure record title be made merely to quiet title and protect it from litigation, it will not be treated as a recognition of the superiority of the title sought to be acquired, otherwise it will be so treated.

5. SAME—CORRESPONDENCE, EFFECT OF.

Correspondence between defendant, the adverse claimant, and plaintiffs' predecessor in title, after the statutory period had expired, in which defendant sought to obtain a deed to the land in question, *held*, not to show that defendant recognized the superiority of the title sought.

6. SAME—FINDING JUSTIFIED BY PROOFS.

The finding of the court below that defendant had ac-

On question of adverse possession of railroad right of way, see notes in 2 L. R. A. (N. S.) 272; L. R. A. 1916B, 657.

quired title by adverse possession, *held*, justified by the proofs.

7. SAME—RAILROAD MAY ACQUIRE TITLE BY ADVERSE POSSESSION.
A railroad company may acquire title to land by adverse possession.

Error to Muskegon; Perkins (Willis B.), J., presiding.  Submitted January 29, 1924.  (Docket No. 40.)  Decided March 5, 1924.

Ejectment by William Munroe and others against the Pere Marquette Railway Company.  Judgment for defendant.  Plaintiffs bring error.  Affirmed.

*Travis, Merrick, Warner & Johnson* and *Cross, Foote & Sessions,* for appellants.

*Norris, McPherson, Harrington & Waer (John C. Shields,* of counsel), for appellee.

SHARPE, J.  When we speak of the defendant, we include its predecessors.  Defendant acquired the record title to a 30-foot right of way across block 326 in the city of Muskegon in 1871, and has occupied and used a strip of land on each side of it across said block for many years.  In this action of ejectment, plaintiffs seek to recover possession of these strips of land. It is conceded that they have the record title thereto. The case was tried by the court without a jury.  Findings of fact were made, from which the court concluded as a matter of law that defendant had acquired title by adverse possession.  Plaintiffs review the judgment entered for defendant by writ of error. The assignments relate to certain of the findings as made (it being claimed that they are unsupported by the proofs), to the refusal to find as requested by plaintiffs, and to the conclusion of law reached by the court.

In its tenth finding, the court found that defendant

had been in possession of the land in dispute since 1877, without permission or license from the owners, and that the nature of the possession was such as created in defendant a good and sufficient title thereto by adverse possession. Plaintiffs insist that there is no competent evidence to support this finding, and also that it is against the great weight of the evidence. The testimony of Charles H. Root, a switchman of the defendant, who has been in its employ since 1871, is quite convincing that the strips in dispute were occupied by side tracks and switches as early as 1877, and that such occupancy has continued without interruption to the present time. There is considerable other testimony to the same effect. In their reply brief, plaintiffs' counsel say:

"We admit that the defendant did offer testimony showing that it or its predecessors have been in possession with tracks of a large part of the disputed lands since 1894, or 1897."

We are impressed that the finding of the court that such possession began as early as 1877, and was of the entire strips in dispute, is fully sustained by the proofs. The serious question presented is whether its possession was of such an adverse nature as to ripen into a title. The burden of proof is upon the defendant to establish all the incidents necessary to make its possession adverse as a matter of law. *Conner* v. *Railroad Co.,* 183 Mich. 241; *Houghton County* v. *Massie,* 215 Mich. 654. In the latter case, the following was quoted with approval from the syllabus in *Township of Jasper* v. *Martin,* 161 Mich. 336:

"A mere permissive possession, or one consistent with the title of another, however long continued, can never ripen into a title by adverse possession."

We find no proof, and we do not understand that plaintiffs claim there is any, tending to show that de-

fendant's original entry on this land, and its occupation thereafter until 1898, was by permission of the owners of the original title.   On April 1, 1898, defendant's president, Mr. Heald, wrote to Thomas Munroe, the superintendent of the Thayer Lumber Company, the then owner of the original title, as follows:

"I hand you herewith deed and blue print showing the land at Muskegon, which according to the conversation I had with you, I desire to secure for the West Michigan Road from the Thayer Lumber Company, now, when both you and I understand the situation clearly, with the understanding, of course, in the form of an agreement, if you so desire it, that the railroad company will not disturb your piling grounds as at present used, as long as you continue to operate in Muskegon.   I desire to have the deed made at this time so that the rights of the road will be assured beyond the possibility of any trouble in the future. When the time comes for the Thayer Lumber Company to sell the property they now occupy in Muskegon, the requirements of the road may be overlooked and it would then be left in bad shape as to its right of way.

"If this meets with your approval I will be glad to have you take such steps as may be necessary to have the deed properly executed."

The deed which accompanied this letter contained three descriptions of land besides those here involved. As to one of them, the defendant then had the record title.   It appears that on May 6th Mr. Heald wrote another letter, not in the record, concerning the matter.   To these letters Mr. Munroe replied on May 7th:

"Yours of the 6th inst.   The deed was also received in yours of April 1st.

"What I said to you when we were on the ground one day last summer was this, that I preferred to leave the question until some time when Mr. Thayer was here, and when we could look over the ground together.

226—Mich.—11.

Later on in the winter during your absence Chief
Engineer McVane came here, and said you desired him
to make out the deed.    I told him he could do so, but
that it would have to await the coming of Mr. Thayer
before anything could be done with it; for this reason
I did not reply directly to yours of April 1st.    The
last time I saw Mr. Thayer he informed me that he
would be here this spring some time.    It seems to
me, however, that the deed as drawn covers consider-
able more territory than I understood you wanted
from my conversation with you while on the ground.
Another thing, freight trains are constantly blocking
our crossings, both through freights and switching
trains.    Instead of pulling the freight house cars
from the north end they persist in pulling them from
the south end, so that altogether we are very much
hindered in our work.    I have made repeated com-
plaints to the office here, but it seems to have no effect
towards bettering the situation.

"I prefer as above stated to leave the matter until
such time as Mr. Thayer will be here, and then take
it up with you and him, but whatever is done I think
we should have an agreement with your company that
our crossings should not be blocked with cars and that
freight house tracks should be pulled from the north
end only."

Plaintiffs' counsel strenuously insist that these
letters and the deed inclosed in that of defendant in-
dicate clearly that defendant at that time "recognized
the superior title" of plaintiffs' predecessor to the lands
in dispute and thereby admitted that it had not ac-
quired title thereto by adverse possession.    Thomas
Munroe died in 1906.    Mr. Heald was unable "to re-
call anything of a definite nature in connection with
this deed."

It appears that from an early day Mr. Thayer had
been a large stockholder and director in the defendant
company and one of its predecessors, and that a very
friendly relation existed between the lumber company,
of which he was the largest stockholder, and the rail-
road companies.    Plaintiffs' counsel stress this fact

and the correspondence in 1898 as rebutting any presumption that defendant's possession and occupancy were adverse, and insist that the fair inference to be drawn therefrom is that it was permissive only.

It appears, however, that neither Mr. Thayer nor any of the companies in which he was interested acquired any title to the land in dispute until 1878, and, as defendant's possession began as to at least a part of the land as early as 1871, and it was in possession of all of it in 1877, defendant insists, and we think with much force, that the intimate relations of Mr. Thayer with the railroad companies can affect the question but little, if at all.    It in no way tends to show that the original entry was permissive only.

The effect to be given to the letters written in 1898 is discussed by counsel at length, and many authorities are cited to sustain their respective claims.    Plaintiffs' counsel rely on the rule stated in 2 C. J. p. 102, as follows:

"A recognition of the title of the true owner after the bar of the statute has run, so as to complete the title of the adverse claimant, will not alone defeat the title so acquired, but such recognition is evidence to be considered in determining whether in fact the prior possession of the adverse claimant was in fact adverse or a possession in subordination to the title of the true owner,"

and the cases cited in its support.    There would seem to be no question but that, if the letter written by Mr. Heald be treated as a recognition of the superior title of the then plaintiff, or as an admission that defendant then had no title but desired to secure one, it should be held to be an acknowledgment on its part that its possession of the premises theretofore had was by permission of the owner and not hostile to his rights.    A reading of the entire letter, however, is convincing that it should not be so interpreted.    In it Mr. Heald says:

"I desire to have the deed made at this time so that the rights of the road will be assured beyond the possibility of any trouble in the future."

The only rights which the road had in the lands in dispute were such as were acquired by its possession. It wanted additional land to that which it then occupied, and desired to purchase it.   It also desired to have its possessory rights forever set at rest by a conveyance from the owners of the record title.   We do not think that an attempt by one who has acquired title by adverse possession to secure a deed of the land for the purpose of avoiding litigation in the future as to the validity of the title thus acquired, or to make his title one of record, should, in the absence of other proof, be treated as a recognition of the superior title of the owner or an admission that the possession enjoyed by him was permissive only.   The reasoning of the authorities and the conclusions reached rest upon the purpose of the person in possession in seeking to secure the conveyance.   If the effort be made merely to quiet title and protect the person in possession from litigation, it will not be treated as a recognition of the superiority of the title sought to be acquired, otherwise it will be so treated.   This is the rule laid down when it is claimed that such recognition interrupts the running of the statute.   It applies with greater force when the attempt is made, as here, after the statutory period has expired. *Chapin* v. *Hunt*, 40 Mich. 595; *Ripley* v. *Miller*, 165 Mich. 47 (Ann. Cas. 1912C, 952).   See, also, 2 C. J. pp. 105, 256, 257; 1 R. C. L. p. 725, and the numerous cases cited in the notes thereto.

As we interpret the language of the letters written in 1898, there was no purpose on the part of the defendant to recognize plaintiffs' superior title nor any admission therein that defendant had been occupying the premises by permission only.   The conclusion of

law reached by the trial judge was fully justified by the proofs.

Can a railroad company acquire title to land by adverse possession? This court has held that it can. *Felton* v. *Wedthoff*, 185 Mich. 72. It is said in 2 C. J. p. 229 that the weight of authority so holds. The writer adds:

"There are, however, a number of well considered decisions which maintains the contrary doctrine,"

and cites cases from the Pennsylvania and North Carolina courts. These holdings are accounted for by the fact that in these States, under constitutional or statutory provisions, railroad companies may take possession of lands without condemnation and pay for them afterwards through an assessment of damages. The entry, therefore, is not in the nature of a trespass, and no possessory rights can be predicated thereon. Plaintiffs' counsel rely on *Grand Rapids, etc., R. Co.* v. *Chesebro*, 74 Mich. 466, and *Minneapolis, etc., R. Co.* v. *Marble*, 112 Mich. 4. In the *Chesebro Case* it is said that—

"there can be no possessory right in a railroad company adverse to the real owner, without either a license or a payment or tender after a valid condemnation."

No claim of title by adverse possession was there made. The plaintiff entered upon the land without right. A bill was filed by defendant to restrain it from further operation. An injunction was refused on plaintiff's undertaking to begin condemnation proceedings. The question under consideration when the language quoted was used was the right to begin such proceedings when in possession. The effect of what was said was to distinguish the right to take possession under our Constitution and statutes from that conferred in the States above noted. This decision was not referred to in the *Felton Case*. In our opinion,

it is in no way controlling. All that was decided in the *Marble Case* was that a railroad company may not acquire title to land by dedication, by the owner of certain premises designating its right of way on a city plat as "M., St. P. & S. Ste. M. Ry."

The judgment is affirmed.

CLARK, C. J., and McDONALD, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.