OLSON v. NORDAN.

1. ADVERSE POSSESSION—NOTICE—HOSTILITY.
Law contemplates that owners of real estate are sufficiently interested therein to keep informed of possession and use thereof by others in nature of claim of right which might ripen into title by prescription if undisturbed.

2. LIMITATION OF ACTIONS—EJECTMENT—STATUTES.
Statute limiting time for bringing ejectment is one of repose (CL 1948, § 609.1).

3. SAME—ADVERSE POSSESSION.
Owner who sleeps on his rights for 15 years as against intruder of real estate, whether such at time of entry, or after permissive entry by known repudiation of leave and assertion of right, loses title and title becomes vested in usurper (CL 1948, § 609.1).

4. ADVERSE POSSESSION—TITLE—HOUSE AND LAKE LOT—STATUTE.
Plaintiff's contention that his adverse possession of the house and lake lot in question exceeded the 15 years required by statute to confirm his title thereto *held*, supported by the record (CL 1948, § 609.1).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 6] 3 Am Jur 2d, Adverse Possession § 32 *et seq.*
[2] 25 Am Jur 2d, Ejectment § 61.
[3] 3 Am Jur 2d, Adverse Possession § 33.
[4, 5] 3 Am Jur 2d, Adverse Possession § 253.
[7] 3 Am Jur 2d, Adverse Possession § 103.
[8] 3 Am Jur 2d, Adverse Possession §§ 31, 53.
[9] 3 Am Jur 2d, Adverse Possession § 239.

5. SAME—BURDEN OF PROOF—EVIDENCE—RECORD.

Finding of trial court that plaintiff's burden of proof of his adverse possession of premises involved had been discharged by production of a clear preponderance of evidence, *held*, substantiated by record.

6. SAME—HOSTILE, OPEN VISIBLE POSSESSION.

Possession of land by plaintiff who had supplied the purchase price, paid the taxes, erected and occupied a house thereon *held*, to be so open, visible, and notorious that it raised a presumption that the record owner, son of plaintiff, knew that his rights were invaded intentionally and with purpose to assert claim of title, and even if possession was permissive at first, it was changed by said acts to one of hostility.

7. PLEADING—ADMISSIONS—ADVERSE POSSESSION.

Allegation in plaintiff's complaint that record owner had promised to convey to plaintiff land plaintiff claims by adverse possession *held*, not to constitute an admission that title was in record owner.

8. ADVERSE POSSESSION—RECOGNITION OF SUPERIOR TITLE.

An attempt by one who has acquired title by adverse possession to secure a deed of the land for the purpose of avoiding litigation in the future as to the validity of the title thus acquired, or to make his title one of record, should not, in the absence of other proof, be treated as a recognition of the superior title of the record owner or an admission that the possession enjoyed by him was permissive only.

9. SAME—ACTS TO PERFECT RECORD TITLE.

Acts in effort to make title appear better of record are inconsequential, if essential elements of adverse possession are clearly established and title fixed thereby vested.

Appeal from Iron; Brown (Ernest W.), J. Submitted Division 3 October 4, 1966, at Marquette. (Docket No. 640.) Decided February 28, 1967.

Bill of complaint by John Hanson against Josephine Nordan, Joline Hanson, Lauren Hanson Jr. and William T. Rezin, administrator of estate of Lauren J. Hanson, deceased, for a determination that title to certain property is in John Hanson.

H. J. Olson, administrator of estate of John Hanson, was substituted as party plaintiff on death of plaintiff. Judgment for plaintiff. Defendants appeal. Affirmed.

*L. P. Fisher,* for plaintiff.

*Paul Rahm,* for defendants.

FITZGERALD, J. On June 9, 1943, John Hanson purchased a .lot on the shore of Sunset lake in Iron county, Michigan. He caused the name of his youngest son, Lauren, to be placed on the deed as grantee ostensibly because of domestic difficulties which John was then having with his wife. Later in the year, John began the construction of a cabin on the lot, purchasing the material himself and hiring a carpenter to assist him. This cabin served as the home of John Hanson until his death in 1963.

At the time John purchased the lot, his son, Lauren, was a teenager and recent high school graduate. Shortly thereafter, Lauren entered military service, then returned to the Iron county area for a short period of time after his discharge. He then left Michigan to take a job in one of the western States, where he subsequently married and his two children were born.

On November 18, 1959, Lauren Hanson died, at which point this real life drama takes on added dimension. After some negotiations regarding the title to this property between John and Lauren's widow, Josephine, the exact nature of which are disputed, the 1960 taxes were paid by Josephine. All taxes previous to this time had been paid by John.

On November 5, 1962, John Hanson commenced the present action against Josephine Nordan,

Lauren's since-remarried widow, and Lauren's two children. He claimed title to the lake property based on various alternative theories including adverse possession.

Prior to trial of the cause, John Hanson died and his administrator was substituted as plaintiff. Six witnesses testified at the trial, displaying varying degrees of recall concerning the then seemingly unimportant events with which they had tangential connections over a 20-year period. The trial judge found that John Hanson had been in "actual, continuous, visible, notorious, distinct and hostile possession, under claim of ownership, known to and acquiesced in by the owner of the record title, for a period of 15 years and upwards prior to the time of filing the bill of complaint." Judgment entered ordering that the estate of John Hanson hold title to the premises "perfect as against the said defendants," and that the defendants execute any necessary conveyances to remove the existing cloud of title. The estate was ordered to reimburse Josephine Nordan for the taxes paid on the property from 1960 to the date of the judgment.

Defendants here appeal from this judgment, bringing four questions before this court. The first two questions go to the sufficiency of the proofs as to adverse possession, specifically as to whether the burden of proof had been sustained by plaintiff and whether the presumption of permissive entry had been overcome. The remaining two questions are of narrower scope and will be set forth later in this opinion.

Appellants' first two questions contend that John Hanson's possession was permissive rather than adverse, and, even if adverse, of insufficient duration to ripen into title. On the question of permissiveness, the facts here are highly similar to those in

*Gardner v. Gardner,* 257 Mich 172, decided in 1932. The *Gardner Case* involved 2 brothers, Henry and Leonard. In 1893 Henry became the owner of record of a parcel of property and, at that time, Leonard moved onto the premises and took possession thereof. During the succeeding years, the brothers remained on friendly terms, Leonard continuing to live on the parcel in question, Henry residing elsewhere. After Henry's death, his son and sole heir brought an ejectment action against Leonard, who countered with a claim of adverse possession.

The facts adduced at the trial and emphasized by the Supreme Court in its opinion in that case are so nearly identical with those in the instant case that the following portion of the *Gardner* opinion might be used interchangeably here (pp 175, 176):

"The record is barren of exercise of rights, with reference to the property, by Henry M. Gardner at any time, and the record is replete with evidence that Leonard B. Gardner at all times notoriously employed the property for his own purposes, paid the taxes, erected expensive buildings thereon, occupied one as a residence and rented the other. It is incredible that Henry M. Gardner was not aware of the open and visible evidence of asserted ownership exercised by defendant. If possession was permissive in the first instance, it soon changed to repudiation of leave to that of asserted right and hostility, and so continued by use and occupation and improvements wholly incompatible with recognition of ownership in Henry. The law contemplates that owners of real estate are sufficiently interested therein to keep informed of possession and use thereof by others in the nature of a claim of right which might ripen into title by prescription if undisturbed. The statute limiting time for bringing ejectment, CL 1929, § 13964,* is one

---

* CL 1948, § 609.1 (Stat Ann § 27.593). See, currently, CLS 1961, § 600.5801 (Stat Ann 1962 Rev § 27A.5801).—Reporter.

of repose. If one sleeps on his rights for 15 years as against an intruder of his real estate, whether such at time of entry, or after permissive entry by known repudiation of leave and assertion of right, the title is lost to the sleeper and vested in the usurper."

Nothing in the record before us provides a basis for distinguishing the instant case from *Gardner* or avoiding the conclusion that any presumption of permissiveness was amply overcome. See, also, *Walker* v. *Bowen* (1952), 333 Mich 13.

As to the duration of the period of adverse possession, the memory of some of the witnesses unquestionably falls short of exactitude. One witness, however, a childhood friend and schoolmate of Lauren Hanson, testified that he remembered the details of the construction of the cabin on the property by John Hanson and a carpenter hired by John and that the work commenced in the summer of 1943. His placement of the date as the summer of 1943 is buttressed by the fact that he entered military service in 1944 and did not return to the area until 27 months thereafter.

Placing the date of the commencement of construction of the cabin as the summer of 1943 is consistent with all other testimony on this point with the exception of that of the carpenter who assisted John Hanson and suggested that the cabin building took place around 1935, but admitted that he really had no recollection of the date.

We are satisfied, as was the trial court, that the plaintiff has discharged his burden of proof by producing a clear preponderance of evidence substantiating his claim of adverse possession.

The first of the remaining pair of questions to which we have previously alluded contends that the allegation in plaintiff's complaint that Lauren Han-

son had promised to convey the land to plaintiff constitutes an admission that title was in Lauren and is sufficient to prevent a judgment of adverse possession. Such a contention is not unique to the law of adverse possession and, in varying forms, has been answered by the Michigan courts in the past.

In *Munroe* v. *Pere Marquette Railway Co.* (1924), 226 Mich 158, at 164, the Court spoke to this question as follows:

"We do not think that an attempt by one who has acquired title by adverse possession to secure a deed of the land for the purpose of avoiding litigation in the future as to the validity of the title thus acquired, or to make his title one of record, should, in the absence of other proof, be treated as a recognition of the superior title of the owner or an admission that the possession enjoyed by him was permissive only."

And in *Gardner* v. *Gardner, supra,* the question was met with this language (p 177):

"If the essential elements of adverse possession are clearly established and title fixed thereby vested, acts in an effort to make the title appear better of record are inconsequential."

We find nothing in the record which convinces us that the plaintiff either recognized outstanding interests in the land superior to his own or considered his possession to be permissive. Accordingly, we cleave to the principle that there is nothing inherently incompatible between a claim of right or ownership in land and efforts to clear the record title thereto.

Defendants' remaining question asks whether plaintiff's failure to answer certain affirmative pleadings should not be held to constitute an admission under GCR 1963, 111.5. More specifically, de-

fendants cite paragraph 2 of their answer which admits the possession of John Hanson but claims that such possession was with the consent of Lauren Hanson and therefore not adverse. Their theory is that failure to reply to their answer constitutes an admission of the permissive character of John Hanson's occupancy.

The trial court answered this contention in its written findings of fact and conclusions of law in this fashion:

"There is no merit to this since paragraph 4 of the complaint alleges that 'plaintiff has at all times been in open, exclusive, continuous and adverse possession of the said premises under claim of right for upwards of 19 years.' Clearly the issue of permissive possession was put in issue by the pleadings and required no further refutation."

This analysis can be adopted for our answer here, the days of "sudden death" pleadings being but a dim memory from the past.

Judgment affirmed. Costs to plaintiff-appellee.

BURNS, P. J., and T. G. KAVANAGH, J., concurred.