JAMES W. CONVERSE

*v.*

SAMUEL D. WEAD.

*Filed at Ottawa May 12, 1892.*

1. BURNT RECORDS ACT—*evidence admissible to establish title under that act.* In a proceeding to establish title under the Burnt Records act, when the foundation is laid by the filing of a proper affidavit, the petitioner has the right to offer, and the court shall receive, as evidence, any abstract of title, or letter-press copy thereof, made in the ordinary course of business prior to the loss or destruction of the records; and it is made lawful for any such party to offer, and the court shall receive, as evidence, any copy, extract or minutes from such destroyed records, or from the originals thereof, at the date of such destruction or loss, in the possession of persons then engaged in the business of making abstracts of title for others for hire. Section 24 also provides that "a sworn copy of any writing admissible under this section, made by the person or persons having possession of such writing, shall be admissible in evidence," etc., subject to the proviso therein named.

2. SAME—*original and secondary evidence.* The deeds and other instruments, and the records thereof, are the original evidence under this statute, and the abstract of title made as required by section 24 is secondary evidence. It is, however, only one kind of secondary evidence. The copies, extracts or minutes mentioned in section 24 are another kind of secondary evidence. So a party may introduce either the abstract of title or the copies, extracts or minutes, and the latter are not secondary evidence of the former. To require proof of the loss of the abstract of title before allowing copies, extracts or minutes to be introduced, is to require secondary evidence of secondary evidence, which is not permissible.

3. SAME—*must support the allegations of the petition.* A petition for establishing the title to land in the plaintiff alleged that a railroad company, by its trustees, who held the legal title, conveyed the premises to James Allen, under whom plaintiff claimed to own the land, but the evidence failed to show any such conveyance: *Held,* that a decree finding the title in the plaintiff, and confirming the same, must be reversed for want of proof of title.

4. EVIDENCE—*parol evidence to explain the abbreviations in written instruments.* The minutes in an abstract of title as to a deed from a railroad company to one Allen showed in one column the words, "Ill. C. R. R. Co.," in another, "Jas. S. Allen," in another, "D.," in another,

"Mar. 5, '69," and in another, "E. ½ S. W. ¼ (W. of Little Calumet Riv.) 18, 37, 15." A witness who was familiar with the system of entries and making of abstracts by abstract makers, and knew their rules, and had worked with their men before a fire which destroyed the records, and assisted them daily in taking off minutes of deeds from the records, testified that the first abbreviation meant, "Illinois Central Railroad Company," grantor; the second, "James S. Allen," grantee; the third meant "deed," and the others indicated the date of the deed and the description of the property: *Held*, that the testimony of the witness was properly admitted.

5. Parol evidence may be received to explain the meaning of abbreviations in written instruments, and to show the words for which they stand.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Mr. WILLIAM R. PLUM, for the appellant.

Mr. H. S. MECARTNEY, for the appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill or petition, filed on May 28, 1891, under what is known as the "Burnt Records" Act, to establish the title in Wead, the petitioner, to lot 4 in block 10 and lots 4, 5, 6, 7 and 8 in block 9 in Allen's Addition to South Chicago, a subdivision of the E. ½ S. W. ¼ (west of the river) of Sec. 18, etc. After alleging his ownership "in fee simple absolute" of said lots and the destruction of the records in Cook County by the great fire of October, 1871, the petitioner sets forth the various links in his chain of title from the Government to himself. The petition makes the appellant, Converse, and a number of other persons, including the "unknown owners or holders" of a certain indebtedness, and "all whom it may concern," parties defendant. Default was entered against all the defendants except Converse. The only allegations in the petition, which specifically refer to Converse, are, that he claims some title or interest in said lots, but has none; that his residence

is in Chicago, and that his is one of the names of "the parties, to whom said premises have been conveyed and said conveyances recorded in Cook County since the destruction of the records," etc. The petition further alleges, that the premises are vacant and unoccupied. The prayer is for a "summons in chancery," and that the title may be confirmed in petitioner free of all claim, title or interest of the defendants, and for such other and further relief as the nature of the case may require.

The answer of the defendant, Converse, neither admits nor denies the conveyances and title deeds set up in the petition, but insists upon strict proof thereof; it denies that petitioner is "the owner or in any wise interested in the lots," but claims that he, the defendant, "is seized of the paramount title therein and thereto;" it admits that said E. $\frac{1}{2}$ S. W. $\frac{1}{4}$, etc., was platted, and that the plat was recorded and entitled "Allen's Addition to Chicago," and that the lots are vacant and unoccupied. The answer then sets up two tax deeds, under which "defendant claims the whole of said lots and lands as his in law and equity," and also avers, that the defendant has paid all the taxes and assessments on lots 5, 6, 7 and 8 for the years from 1884 to 1889 inclusive, and on the other lots for the years from 1881 to 1889 inclusive.

The decree finds the petitioner to be the owner in fee simple absolute of the lots, and confirms the title in him; and that the tax deeds are clouds upon the title; and orders that the same be set aside upon payment to the defendant of the amounts of the tax sales, and the subsequent taxes, etc., paid by the holders of the tax titles, together with interest and costs, etc.

Upon the hearing an affidavit was filed in the cause, made by the attorney of the petitioner, in accordance with section 24 of the Burnt Records Act of 1872, as amended in 1887. (Laws of 1887, page 261.) The affidavit stated, that the originals of the deeds and instruments of writing therein

mentioned relative to the title to said lots were lost or destroyed, and that it was not within the petitioner's power to produce the same, and that the records thereof were destroyed by fire on October 8 and 9, 1871. Where a foundation is laid by the filing of such an affidavit, the petitioner has the right to offer, and the court shall receive as evidence, any abstract of title, or letter-press copy thereof, made in the ordinary course of business prior to such loss or destruction; "and it shall also be lawful for any such party to offer, and the court shall receive, as evidence, any copy, extracts or minutes from such destroyed records, or from the originals thereof, which were, at the date of such destruction or loss, in the possession of persons then engaged in the business of making abstracts of title for others for hire." (Sec. 24 aforesaid; Laws of 1887, page 261.) Section 24 also provides, that "a sworn copy of any writing admissible under this section, made by the person or persons having possession of such writing, shall be admissible in evidence," etc., subject to the proviso therein mentioned. The petitioner introduced in evidence sworn copies of such extracts and minutes, and of such letter-press copy, etc., as are specified in said section 24, making such proof in regard to the same as is therein required.

By Act of Congress of September 20, 1850, certain lands, including section 18, were granted to the State of Illinois for the purpose of aiding in the construction of a railroad. By Act of the legislature of this State, approved February 10, 1851, said lands were granted to the Illinois Central Railroad Company. Said copies and minutes and extracts showed the agreement between said Company, and Morris Ketchum, John Moore and Samuel D. Lockwood hereafter referred to, and also showed: a deed by said Company to James S. Allen, dated March 5, 1869, conveying said E. $\frac{1}{2}$ S. W. $\frac{1}{4}$; a plat dated March 17, 1869, of Allen's Addition, as above described; and a number of deeds by which the title passed from Allen to petitioner.

The testimony made out a good title in appellee, unless the objections made by appellant are valid. The first objection, as we understand it, is, that an abstract of title made before the great fire, or before the loss of the records, is better evidence than such extracts or minutes from the destroyed records or the originals thereof, as are mentioned in section 24; and that such extracts or minutes are not admissible in evidence, until it is shown that no ante-fire abstract of title is in existence. We cannot concur in this view. The deeds and other instruments and the records thereof are the original evidence under the statute. The abstract of title, made as required by section 24, is secondary evidence. It is, however, only one kind of secondary evidence. The copies, extracts or minutes mentioned in section 24 are another kind of secondary evidence. A party may introduce either the abstract of title, or the copies, extracts or minutes. The latter are not secondary evidence of the former. To require proof of the loss of the abstract of title, before allowing the copies, extracts or minutes to be introduced, is to require secondary evidence of secondary evidence, which is not permissible. (*Thatcher* v. *Olmstead*, 110 Ill. 26.)

It is next urged, that the extracts and minutes were mere abbreviations, and that it was improper to allow parol testimony to be introduced to explain such abbreviations. For example, the minutes as to the deed from the railroad Company to Allen showed in one column, the words "Ill. C. R. R. Co.;" in another, "Jas. S. Allen;" in another, "D;" in another "Mar. 5, '69;" in another "E. $\frac{1}{2}$ S. W. $\frac{1}{4}$ (W. of Little Calumet Riv.) 18, 37, 15." These minutes were *data* collected from the records in abbreviated form, and constituted the materials out of which the abstracts were constructed. (*Heinsen* v. *Lamb*, 117 Ill. 549.) A witness, who was familiar with the system of entries and making of abstracts by the abstract-makers, and knew their rules, and had worked with their men before the fire, and had assisted them daily in taking off

minutes of the deeds from the records, swore, as to these abbreviations, that the first meant "Illinois Central Railroad Company," grantor; the second "James S. Allen," grantee; the third meant "Deed," and the others indicated the date of the deed and the description of the property. We think that the testimony was properly admitted. Parol evidence may be received to explain the meaning of abbreviations in written instruments, and to show the words for which they stand. (1 Am. & Eng. Enc. of Law, page 15, and cases cited; *Shattuck* v. *People*, 4 Scam. 477; *Rowley* v. *Berrian*, 12 Ill. 200; *Olcott* v. *State*, 5 Gilm. 481; *Atkins* v. *Hinman*, 2 id. 444; *Blakeley* v. *Bestor*, 13 Ill. 714; *Jackson* v. *Cummings*, 15 id. 449; *Dukes* v. *Rowley*, 24 id. 210; *Baily* v. *Doolittle*, id. 577; *Avery* v. *Babcock*, 35 id. 175; *Am. Ex. Co.* v. *Lesem*, 39 id. 333; *Collender* v. *Dinsmore*, 55 N. Y. 200.)

The copies, minutes and extracts show, that a certain agreement was made on September 1, 1854, between the Illinois Central Railroad Company, and Ketchum, Moore and Lockwood, which refers to a deed of trust dated March 24, 1851, made at that date by the company to these parties as trustees, conveying certain lands to secure the construction of the railroad. The point made by appellant is, that said deed of trust vested said trustees with the legal title, and that the deed shown by the minutes or extracts to have been made by the Company itself, and not by the trustees, to Allen, did not convey the title to him.

We are inclined to think that this point is well taken. The petitioner alleges, that "said railroad company *by said trustees* conveyed by a deed, dated March 5, 1869, the E. $\frac{1}{2}$, etc., to James Allen." If it were true, that the deed of trust authorized the trustees to make deeds in the name of the company by themselves as trustees or attorneys, there is no proof here of the execution of such a deed. The recital in the agreement, and the Act of February 10, 1851, (Laws of 1851, page 61; Adams & Durham's Real Est. Stat. and Decis.

page 1755) show, that the lands were conveyed by the company to the trustees in order to enable the latter to make sales. The legal title passed to the trustees. The petitioner has not proved that a deed was made to Allen by the trustees. So far as appears from this record, the legal title still remains in such trustees, who are not made parties to this proceeding. (*Smith* v. *Hutchinson*, 108 Ill. 662; *Gage* v. *Caraher*, 125 id. 447.) The decree, in finding the petitioner to be "the owner in fee simple absolute of the real estate described" in the petition, is erroneous, as the petitioner has not proved that the legal title outstanding in said trustees ever became vested in him.

For the error thus indicated the decree of the Superior Court is reversed, and the cause is remanded to that court.

*Decree reversed.*