LOUIS P. KOTZ *et al.*

*v.*

VERONICA BELZ *et al.*

*Opinion filed February 17, 1899—Rehearing denied April 6, 1899.*

1. BURNT RECORDS—*a will relating to real estate is within the Burnt Records act.* A will relating to the title to real estate is within the scope of the Burnt Records act.

2. SAME—*what admissible where the record of will is lost or destroyed.* Under sections 23 and 24 of the act on lost or destroyed records, (Rev. Stat. 1874, p. 845,) where a controversy exists as to whether a certain person died testate whose alleged will and the record thereof had been destroyed by fire, testimony of a witness who has been custodian of abstract books saved from the fire, that original entries therein show the estate of such person was pending in the county court at the time of the fire and that a will of such person was recorded as a document of a certain number, is admissible.

3. EVIDENCE—*what evidence will establish fact of testacy.* Testimony of an abstracter of titles in business before the destruction of the county records by fire, that he was acquainted with a certain person and remembered his last sickness and death, that he left a will which was recorded in the recorder's office, and that his estate was pending in court when the fire occurred, proves the fact of testacy.

4. SAME—*declarations by one in possession are competent to show kind of estate claimed.* Declarations made by one holding exclusive possession of real estate, to the effect that she was the sole devisee under her husband's will and got everything, are admissible in subsequent partition proceedings between her heirs and those of her deceased husband to show the kind and extent of estate claimed.

5. LIMITATIONS—*bar of twenty year statute effective against co-tenants.* One holding adverse, exclusive and continuous possession of land under claim of ownership, who pays all taxes and encumbrances and appropriates all the rents and profits for over twenty years, becomes the absolute owner of the premises, and the bar may be interposed as against alleged co-tenants not under disability during the running of the statute.

6. SAME—*exclusive possession for over twenty years by one co-tenant ousts the others.* Adverse, notorious and exclusive possession of the entire premises for over twenty years by one co-tenant under claim of sole ownership, without accounting to other co-tenants for rents and profits or being called upon to account, operates as an ouster of the latter, who were under no disability.

7. SAME—*twenty years' possession without muniment of title is a bar.* Twenty years' adverse, notorious and exclusive possession of land by one claiming to be the sole owner thereof under her husband's will, will bar partition proceedings by parties claiming to be co-tenants with her, who allege intestacy of her husband, even though she cannot prove contents of will under which she claims title.

APPEAL from the Circuit Court of Cook county; the Hon. EDMUND W. BURKE, Judge, presiding.

This was a bill for partition brought by Louis P. Kotz in the circuit court of Cook county on the 28th day of April, 1894. An amended bill was filed on March 1, 1895, in which it was alleged that John E. Weber, at his death, was seized in fee of lot 10 in assessor's division of lots 1 and 4, in block 54, of the original town of Chicago; that Weber died intestate February 18, 1864, leaving no descendants and no father or mother, and leaving Frances Weber, his widow, and the ancestors of appellants, as his

only heirs-at-law; that upon the death of said Weber he left his said widow in possession of the real estate, and that she remained in possession thereof, for herself and her co-owners, tenants in common, until the 14th day of March, 1894, when she died intestate, leaving no husband and no descendants and no father or mother, and leaving the appellees her heirs-at-law.

The answer of Clemens F. Periolat and others, heirs of Frances Weber, deceased, admits that John E. Weber died seized of said real estate, but denies that he died intestate, and avers that he died leaving a last will and testament, which was duly admitted to probate in said county; admits that he left the heirs as charged in the bill; denies that John E. Weber left his widow in possession of the real estate; avers that John E. Weber held possession of said real estate up to the date of his death, and after his death Frances Weber, his widow, took possession of the same, but not as tenant in common with the complainant or the heirs of John E. Weber, deceased, but that immediately after the death of her said husband Frances Weber took possession of said real estate under claim of title in fee, as sole devisee of said real estate under the will of her said husband, and held and continued to hold the sole and absolute possession of said real estate, as against all persons, up to the date of her death, and that such possession by her was hostile to every other claim and interest, and that under claim of title under said will she paid all taxes assessed against said premises for twenty consecutive years.

Charles E. Kotz, and all the other appellants except Louis P. Kotz, answered the amended bill of Louis P. Kotz, in which they denied that Weber died intestate, but charged that he died leaving a last will and testament, which said will was duly recorded in the recorder's office of Cook county, Illinois, February 4, 1864, and was proved and probated by the county court of said county, and all papers thereof were kept by the clerk of the said

county court as case No. 10, box No. 65, and burned October 9, 1871; charged that in and by said will he gave to his sister, Madeline Kotz, and, Joseph Weber, his brother, and their heirs, all the above described premises, subject to the life estate of Frances Weber, his widow; admitted that John E. Weber left him surviving Frances Weber, his widow, and other heirs, as charged in amended bill.

After answers were filed, Veronica Belz, one of the appellees and a sister of Frances Weber, deceased, filed her cross-bill against all the other parties to this suit, alleging that Frances Weber died intestate; that in her lifetime she was seized of the real estate in question in fee simple, as sole devisee of her husband, John E. Weber, deceased; that she had held title thereto for more than thirty years prior to her decease, and prayed for a partition, according to their rights and interests, among the several heirs of said Frances Weber, deceased, set out in said cross-bill.

To the cross-bill appellant Louis P. Kotz filed an answer, denying that Frances Weber was seized in her lifetime of said real estate, but admitting that she died March 14, 1894, intestate, leaving no husband and leaving the heirs named in the cross-bill, but denying that the heirs of Frances Weber, deceased, became seized of the portions and interests alleged in the cross-bill. The other appellants also filed an answer to the cross-bill, in which they denied that Frances Weber was seized in her lifetime of the real estate in question, but alleged that John E. Weber was, at the time of his death, seized of the premises; that he died on the 18th day of February, 1864, leaving a will, in and by which he devised said real estate to Frances Weber for life with remainder to his heirs-at-law; admitted that said Frances Weber died intestate, leaving her heirs, as charged in the cross-bill, etc.

Replications were filed to the answers to the amended bill and cross-bill, and the cause was referred to the master in chancery, Jeremiah Leaming, to take and re-

port the testimony and make report as to his conclusions
as to the facts and the law. The master, after all the
evidence of the respective parties had been introduced
before him, made a report, which, among other things,
contained the following: "John E. Weber owned no other
real estate than that described in the bill, which was then
occupied by him and his wife in part as a home, and a
portion was rented to Mary Trost and husband and an-
other portion was rented and used as a saloon. Immedi-
ately upon the death of John E. Weber his widow, Frances
Weber,.entered into possession of said premises, collected
the rents from the tenants and claimed said premises as
her own as sole legatee under the will of John E. Weber,
deceased, and continued uninterruptedly, through herself
or her representatives, to collect the rents from the said
premises from the time of the death of John E. Weber
to her own death, about thirty years, paying taxes and
assessments and an encumbrance of about $2500, and
taking a release deed to herself, appropriating to her own
use the entire income of said premises; that at the time
of the death of John E. Weber all his heirs were of law-
ful age and free from disability; that there is evidence
tending to prove that there was an estate of John E.
Weber pending in the probate court of Cook county prior
to 1871, and that a will of John E. Weber was recorded
in the recorder's office of Cook county February 24, 1864,
bearing date January 27, 1864; that beyond the declara-
tion of Frances Weber while in possession of the said
premises, and within a short time after the death of her
husband, John E. Weber, that Mr. Weber had bequeathed
everything to her so that she could do what she would,
—that he left a will and she got everything,—there is no
evidence tending to prove the contents of said will; that
the records of Cook county were destroyed in 1871 by
fire; that Frances Weber, in her lifetime, took possession
of the premises immediately upon the death of her hus-
band, claiming, as sole devisee and legatee under his will,

to own the whole of said premises in her own right, and openly, notoriously and adversely continued, uninterruptedly, to occupy, by herself and her tenants, the whole of said premises for a period of thirty years, and to convert to her own use the rents and profits thereof to the time of her death, and at the time of her death became and was vested, by and through such occupancy, with an estate in fee simple in the whole of the said premises; that John E. Weber died testate; that the equities in this case are with the cross-complainant; that partition of said premises should be made as prayed in the cross-bill, among the heirs of Frances Weber, deceased; finds the rights of the respective parties as set forth in the cross-bill. I recommend that the original and amended bills of complaint be dismissed and that the relief prayed for in the cross-bill be granted."

Exceptions were filed to the master's report, which were overruled by the court and a decree entered dismissing the bill and amended bill for want of equity, and directing a partition of the premises among the heirs of Frances Weber, in conformity with the prayer of the cross-bill of Veronica Belz. To reverse that decree this appeal was taken.

ASHCRAFT & GORDON, for appellants:

Where an ancestor's death is proved the law will presume that he died intestate. *Lyon* v. *Kain*, 36 Ill. 362.

In 1864 the widow was entitled to the absolute possession, rents and profits of the homestead as her quarantine right until her dower was assigned. *Gosselin* v. *Smith*, 154 Ill. 74; *Riggs* v. *Girard*, 133 id. 619; *Mettler* v. *Miller*, 129 id. 630.

All evidence necessary to establish the contents of a lost or destroyed will must be strong, positive and free from doubt. *Morris* v. *Swaney*, 7 Heisk. 591; *Southworth* v. *Adams*, 11 Biss. 256; *Dudley* v. *Wardner*, 41 Vt. 59; *Vining* v. *Hall*, 40 Miss. 83; *Davis* v. *Sigourney*, 49 Mass. 487; *Huble*

v. *Clark,* 1 Hagg. Ecc. 115; *Durfee* v. *Durfee,* 90 Mass. 490; *Newell* v. *Homer,* 120 id. 277.

The self-serving declarations of Frances Weber are incompetent. 2 Wharton on Evidence, sec. 1101; *Morrill* v. *Titcomb,* 90 Mass. 100; *Michigan Manf. Co.* v. *Parsell,* 38 Mich. 475; *Daffrom* v. *Crump,* 69 Ala. 77; *Criddle* v. *Criddle,* 21 Mo. 522; *Newell* v. *Horn,* 47 N. H. 379; *Roberts* v. *Roberts,* 82 N. C. 29.

Where a complainant, as heir, sues in partition to recover a disputed title of the ancestor, the defendant will not be a competent witness in her own behalf. *Comer* v. *Comer,* 119 Ill. 170; *Pyle* v. *Pyle,* 158 id. 289.

The occupancy, by a widow, of the lands of her deceased husband, where she has dower and homestead rights, however long continued, will not bar recovery by her heirs after her death. *Musham* v. *Musham,* 87 Ill. 80; *Riggs* v. *Girard,* 133 id. 619; *Gosselin* v. *Smith,* 154 id. 74.

HALEY & O'DONNELL, and LOESCH BROS. & HOWELL, for appellees:

The declarations of Frances Weber while in possession of the real estate in question, claiming ownership thereof, were competent evidence to show the quality and extent of the estate claimed by her. Sedgwick & Wait on Trial of Title to Land, sec. 758; *Lancey* v. *Brock,* 110 Ill. 609; *Ricard* v. *Williams,* 7 Wheat. 59; *Nelson* v. *Whitfield,* 82 N. C. 46; *Smith* v. *Morrow,* 23 Ky. 234; *Comins* v. *Comins,* 21 Conn. 412; *Abel* v. *VanGelder,* 36 N. Y. 513; *Bedell* v. *Shaw,* 59 id. 46; *Sweetenham* v. *Leary,* 18 Hun, 284; *Duffy* v. *Presbyterian Congregation,* 48 Pa. St. 46; *Kennedy* v. *Wible,* 11 Atl. Rep. 98; *Bradford* v. *Guthrie,* 4 Brewst. 351; *Youngs* v. *Cunningham,* 57 Mich. 153; *Cannon* v. *Stockton,* 36 Cal. 535; *Bank* v. *Staples,* 98 Cal. 189; *Lamoreaux* v. *Huntley,* 68 Wis. 24.

The declarations of Frances Weber, and of her conservators, of adverse right, and their successive outward acts of exclusive ownership of an unequivocal character, all open and notorious, for a period of over thirty years,

amounted in law to a complete ouster of the appellants. 1 Am. & Eng. Ency. of Law, (2d ed.) 803; *Baldwin* v. *Ratcliff*, 125 Ill. 376; *Littlejohn* v. *Brock*, 138 id. 478; *Busch* v. *Huston*, 75 id. 343; *Todd* v. *Todd*, 117 id. 93; *Goewey* v. *Urig*, 18 id. 242; *Ricard* v. *Williams*, 7 Wheat. 59; *Dubois* v. *Campau*, 28 Mich. 304; *Knowles* v. *Brown*, 69 Iowa, 11; *Warfield* v. *Lindell*, 38 Mo. 562; *Campbell* v. *Gas Co.* 84 id. 352; *Doe* v. *Prosser*, Cowp. 217; *Law* v. *Patterson*, 1 W. & S. 184.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellants insist that the decree of the circuit court is not sustained by the evidence. That decree found the equities of the case with the cross-complainant, Veronica Belz, and that partition should be made among the heirs-at-law of Frances Weber, deceased.

*First*—Did John E. Weber die testate? The complainant in the original bill, Louis P. Kotz, alleges that John E. Weber died intestate, while all the other appellants except Louis P. Kotz charge in their answers to the cross-bill that John E. Weber died leaving a last will and testament. To sustain the cross-bill defendants called Henry H. Handy as a witness. He testified he had been an abstracter in the city of Chicago for thirty-seven years, and the custodian of all the abstract books saved from destruction in the great Chicago fire in 1871. He stated there were minutes upon the books of original entry that the estate of John E. Weber was indexed in the estate book of Chase Bros. as pending in the county court of Cook county at the time of the fire; that in other books of original entry of Chase Bros. it appeared that the will of John E. Weber, as document No. 76,413, was recorded in the recorder's office; that by the books of Jones & Sellers, another abstract firm, the will of John E. Weber, dated January 27, 1864, was recorded February 24, 1864, in volume 269, page 32, in the recorder's office of Cook county, as document No. 76,413, thus supplementing and confirming the memoranda taken from the books of Chase

Bros. The evidence further shows that John E. Weber died February 18, 1864; that the will was made January 27, 1864,—about three weeks before his death,—and was recorded February 24, which, taken in connection with the estate book of Chase Bros., can lead to no other reasonable conclusion than that the estate of Weber was pending in the county court of Cook county, and that it must have been probated in the county court and a certified copy recorded in the recorder's office of Cook county.

Sections 23 and 24 of chapter 116, (3 Starr & Curtis' Stat. p. 3360,) entitled "Lost or Destroyed Records," provide, in brief, that upon the trial of any suit or proceeding pending in any court of this State, when it shall appear orally in court or by affidavit that the original of any deed or other instrument in writing is lost or destroyed, etc., the court shall receive as evidence any copy, extracts or minutes from such destroyed records or from the original thereof. The witness explained the abbreviations and dates, their meaning, etc. This kind of testimony was properly admitted. This court said in *Converse* v. *Wead*, 142 Ill. 132: "A witness who was familiar with the system of entries and making of abstracts by the abstract makers, and knew their rules and had worked with their men before the fire, and had assisted them daily in taking off minutes of the deeds from the records, swore as to these abbreviations," etc. In *Smith* v. *Stevens*, 82 Ill. 554, this court said with reference to the Burnt Records act: "The condition of property owners in Chicago after the great fire of October, 1871, was appalling, demanding legislative interference. A great evil had befallen them, which this act was designed to remedy. It is emphatically a remedial act, and in accordance with a well established canon it must receive a liberal construction, and made to apply to all cases which, by a fair construction of its terms, it can be made to reach." Certainly a will relating to the title to real estate must be held to come within the scope of this remedial statute.

Another witness, Fernando Jones, who had been engaged in the business of making abstracts of title to real estate in Cook county forty years, and prior to October, 1871, under the name of Fernando Jones & Co., and afterwards under the name of Jones & Sellers, testified he knew John E. Weber and remembered his sickness and death; that he saw him during his last illness, and that there was an estate of John E. Weber in the probate court, and that he had a will, and that the will was recorded in the recorder's office. These facts establish beyond question that John E. Weber died testate and that his will was admitted to probate in Cook county, and there is nothing in the record tending to prove the allegation of complainants that he died intestate.

*Second*—Were the declarations of Frances Weber, while in possession of the premises, competent evidence? Appellants claim they were inadmissible to prove the contents of the will. Conceding they were incompetent for this purpose, they were competent to establish the kind and extent of the estate claimed. The declarations of Frances Weber, made right after the death of her husband, John E. Weber, were, that Weber had bequeathed everything to her so that she could do what she would,—that he left a will and she got everything. At the time of making these declarations she had taken possession of the premises, claiming to own the whole in her own right, as devisee and legatee under her husband's will. The evidence shows she continued, openly, notoriously and adversely, to occupy the entire premises, by herself and tenants, for a period of thirty years. She herself, or through her representatives, collected and used all the rents, paid the taxes, paid off a mortgage for about $2500 and had the release made to herself. She claimed to own the entire premises as her own. On July 17, 1871, she was adjudged insane and Edward M. Bray was appointed her conservator. He filed an inventory, describing this property as owned by Frances Weber in fee, and

afterwards, as such conservator, collected the rents of the premises. On October 8 and 9, 1871, the improvements on the premises were destroyed by fire. A decree of the circuit court of Will county was entered August 15, 1872, authorizing the conservator to lease the real estate, under which decree he executed a lease to William M. Stanley for the period of twenty years, by the terms of which the lessee was to erect a good, substantial stone and brick building on the premises, and pay $1000 per annum rent, payable quarterly in advance, and all assessments of every kind, the building to revert to Mrs. Weber on the expiration of the lease. Afterwards Bray resigned as conservator and James C. O'Connor was appointed as such, who made a new lease to one Henry J. Berger for five years on January 20, 1893, at an annual rental of $4200, together with water rents, taxes and assessments. Frances Weber died in 1894 without having re-married, her husband having died February 18, 1864, thirty years before, and during all this period she held adverse, notorious and uninterrupted possession of the whole premises.

In *Ricard* v. *Williams*, 7 Wheat. 59, (recognized as a leading case,) the declarations of those in possession, whether holding for life or under claim of the fee, were held to be proper evidence. Mr. Justice Story, at page 105, says: "It is to be considered that no paper title of any sort is shown in William Dudley or his son Joseph. Their title, whatever it may be, rests upon possession, and the *nature* and *extent* of that possession must be judged of by the acts and circumstances which accompany it, and qualify, explain or control it. Undoubtedly, if a person be found in possession of land claiming it as his own in fee, it is *prima facie* evidence of his ownership and seizin of the inheritance. But it is not the possession alone, but the possession accompanied with the claim of the fee, that gives this effect, by construction of law, to the act of the party. Possession, *per se*, evidences no

more than the mere fact of present occupation by right, for the law will not presume a wrong, and that possession is just as consistent with a present interest under a lease for years or for life as in fee. From the very nature of the case, therefore, it must depend upon the collateral circumstances what is the quality and extent of the interest claimed by the party, and to that extent, and that only, will the presumption of law go in his favor. And the declarations of the party while in possession, equally with his acts, must be good evidence for this purpose. If he claims only an estate for life, and this is consistent with his possession, the law will not, upon the mere fact of possession, adjudge him to be in under a higher right or larger estate." In *Lancey* v. *Brock*, 110 Ill. 609, this case of *Ricard* v. *Williams* was recognized as authority on the question that the declarations of an owner or claimant in possession of land are competent evidence of the character and extent of the estate claimed by him; but in the *Lancey case* the party in possession, either in his declarations or his claims, did not go to the extent of claiming ownership of the land in fee. *Nelson* v. *Whitfield*, 82 N. C. 46..

In the case at bar it is pertinent to consider the acts of appellants, the heirs of John E. Weber, deceased, during this period of thirty years. During all this length of time they acquiesced in the exclusive possession of Frances Weber and made no claim to any portion of the premises or to the income. This is inconsistent with their present claim, but is consistent with the claim of appellees that Frances Weber claimed the whole premises as sole devisee under the will of John E. Weber, and occupied them openly, notoriously and adversely for thirty years, receiving and appropriating the rents and income to her own use and benefit.

The contention of appellants that Frances Weber occupied the premises as her quarantine right until her dower was assigned is not sustained by the facts in evi-

dence. There being no children, if John E. Weber died intestate she inherited, as heir, one-half of the premises, and, under this view of the case, was a tenant in common to one-half of the property with the heirs of John E. Weber. Under such a case Frances Weber could, by claim of exclusive ownership and open and notorious acts manifesting such acts for a period of twenty years, oust the co-tenants.

In *Goewey* v. *Urig*, 18 Ill. 238, we held that a sale of an entire tract by one of several tenants in common, followed by adverse possession, amounts to an ouster or disseizure of the co-tenants, and that the Statute of Limitations will bar their entry or action. We there said (p. 242): "Tenants in common may disseize a co-tenant by acts appropriating the exclusive possession of the land or permanency [pernancy] of the profits, and especially when such acts are accompanied by declarations of such an intention or it is unequivocally manifested by them. (*Law* v. *Patterson*, 1 Watts & Serg. 184; *Larman* v. *Huey's Heirs*, 13 B. Mon. 436; *Culler* v. *Motzer*, 13 Serg. & Rawl. 356.)' So a sale of the whole tract, followed by adverse possession, amounts to an ouster or disseizin of the co-tenants, and the Statute of Limitations will bar their action or entry. 13 Serg. & Rawl. 356." In *Law* v. *Patterson*, 1 Watts & Serg. 184, (cited in *Goewey* v. *Urig, supra,*) the court held that an entry upon the whole land by one tenant in common, who takes exclusive possession and receives the rents and profits without accounting to his co-tenant, or proof of any demand upon him so to do for twenty-one years, amounts to an actual ouster; that a lease to a third party for seven years, several times renewed, by the co-tenant who went into possession, making in all a leasehold of twenty-three years, is equivalent to a sale of the premises, and must be considered as an ouster of the co-tenant.

The case of *Baldwin* v. *Ratcliff*, 125 Ill. 376, is in harmony with the foregoing authorities. In that case Wiley

R. Palmer died seized of the several tracts of land described in the bill, in Hardin county, January 1, 1853, leaving a widow and four children. Three of the children died unmarried and without issue, leaving the widow and one son, Richard, as their heirs. The widow afterwards married Hiram Belt and had six children. These children conveyed their interests to George W. Ratcliff, the complainant, who filed a bill to partition the lands. The answer denied that the complainant obtained any title to the lands through the conveyances set up in the bill, and that the possession of Richard Palmer was adverse, open and notorious, and continued from 1865 or 1866 until his death; that he cleared the lands, erected buildings, etc., and paid all taxes assessed on the lands; that the will of Richard Palmer devised the lands to the defendants in the bill and was color of title, and set up the Statute of Limitations, adverse possession and payment of taxes for more than seven successive years. The evidence was that Richard Palmer, from the time he took possession of the lands down to his death, claimed to be the owner of the absolute title to all the lands. He leased, cut and sold timber, burned lime kilns on the land and sold and conveyed eighty acres. The lands were assessed in his name from year to year and he paid all taxes as owner. Under the facts, no claim or possession adversely to Richard having been proven and the taxes having been paid, we held there could be no recovery.

In the case at bar there was adverse possession under claim of ownership for thirty years. It was continuous and uninterrupted possession, with payment of taxes during all this period. It was leased to one tenant for twenty years, and after the old wooden building was burned off a new and substantial brick building was erected. All the rents were appropriated and collected by Frances Weber, and she openly and notoriously claimed the property as her own. Section 1 of the Statute of Limitations (2 Starr & Curtis' Stat. p. 2599,) provides: "That no person shall

commence an action for the recovery of lands, nor make an entry thereon, unless within twenty years after the right to bring such action or make such entry first accrued, or within twenty years after he, or those from, by or under whom he claims, have been seized or possessed of the premises, except as hereinafter provided." Under this statute, as this court has often held, adverse possession of land for a period of twenty years, even without any deed or other muniment of title, will bar an action brought by the owner for its recovery. The bar of the statute is not confined to actions of ejectment, but it may be relied upon to defeat a bill for partition, although the bill may be brought by one tenant in common against another. We had occasion to examine this question in *Littlejohn* v. *Barnes*, 138 Ill. 478, and after a careful examination we held that the open, visible and adverse possession of land by one tenant in common, under claim of ownership, for over twenty years was a bar to a bill by another tenant in common for partition, when such possession was so hostile in its character as to put the Statute of Limitations in motion against the complainant.

The heirs of John E. Weber being under no disability on February 18, 1864, when Weber died, and Frances Weber having entered into the possession of the premises as owner, claiming the entire property, and having continued to hold possession continuously and adversely, paying the taxes, appropriating all the rents to her own use and improving the property as owner, she became the owner of an estate in fee simple of the whole of the premises, although she failed to prove the contents of the will of her husband specifically devising the property to her. The twenty years statute of limitations was a bar to a recovery.

The decree of the circuit court will be affirmed.

*Decree affirmed.*