(No. 15488.—Decree affirmed.)

WILLIAM C. TILLOTSON *et al. vs.* ZEBULON FOSTER *et al.*— (DON C. TILLOTSON, Appellant, *vs.* IVAN F. ELLIS, Appellee.)

*Opinion filed October 20, 1923—Rehearing denied Dec. 7, 1923.*

1. LIMITATIONS—*as a rule the statute does not run in favor of one co-tenant against another.* As a general rule the Statute of Limitations does not run in favor of one co-tenant against another, as the possession of one co-tenant is presumed in law to be for the benefit of all, and while this presumption may be rebutted by evidence, stronger evidence is required than in the case of strangers.

2. SAME—*what amounts to an ouster of co-tenants.* The open, notorious, exclusive and continuous possession of land by one co-tenant for the period of the Statute of Limitations, with payment of all taxes and incumbrances and appropriation of rents and profits under a claim of sole ownership, with the knowledge of the other co-tenants and without accounting to them or being called upon to account, amounts to an ouster of co-tenants under no disability.

3. SAME—*when statute will run in favor of co-tenant having exclusive possession.* If one tenant in common holds exclusive possession, claiming the land as his, and his conduct and possession are of such a character as to give notice to his co-tenants that his possession is adverse, the Statute of Limitations will run.

4. SAME—*what does not show that widow was attempting to hold possession in her own right.* The fact that the widow for the first year after her husband's death intestate, leaving her and an adopted minor son, who was nearing majority, as his heirs, made a lease of the farm to a tenant in her own name, cannot be relied upon by collateral heirs of the husband as indicating that she was attempting to hold possession in her own right, where, as soon as the adopted son attained majority, the lease was renewed in both names and where all her conduct thereafter showed that she regarded the adopted son as owning the fee, subject to her dower and homestead.

5. SAME—*when deed is good color of title.* A quit-claim deed whereby an adopted son of a land owner who died intestate, leaving no other children or descendants thereof, conveys to the widow of such intestate "all interest" in such land, is a conveyance of the land itself and is good color of title.

6. SAME—*widow's quarantine has not existed since the revision of 1874.* Since the revision of the Dower statute in 1874 the

widow's quarantine, which was the right of the widow to posses-
sion of land until dower was assigned, has not existed, and the
right to dower before assignment is not an estate in land and gives
the widow no right to possession. (*Lambert* v. *Hemler,* 244 Ill.
254, distinguished; *Klein* v. *Klein,* 276 id. 520, criticised.)

APPEAL from the Circuit Court of Vermilion county;
the Hon. JOHN H. MARSHALL, Judge, presiding.

O. M. JONES, and A. R. HALL, (JONES & LEVIN, and
HALL & HOLADAY, of counsel,) for appellant.

I. RAY CARTER, guardian *ad litem.*

ACTON, ACTON & SNYDER, and GREEN & PALMER,
(HENRY I. GREEN, WILLIAM M. ACTON, and ORIS BARTH,
of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Walter B. Tillotson at the time of his death, on Sep-
tember 4, 1900, was seized in fee simple of 206⅔ acres of
land in Vermilion county. He was survived by his wife,
Lucetta. He left no will and had no descendants, but on
September 17, 1885, on the petition of himself and his wife,
the county court of Vermilion county entered an order for
the adoption by them of a five-year-old boy named Ivan F.
Ellis and for the change of his name to Ivan F. Tillotson.
The boy had been living in their family all his life since
he was two months old, and he continued to live there and
was recognized by them as their son. If the county court
had jurisdiction to enter the order of adoption he was
Tillotson's heir, but if the court was without jurisdiction,
Tillotson's heirs were his wife and four brothers and four
sisters who survived him. After Tillotson's death, his
widow and the boy, Ivan, were in possession of the land
until January 13, 1904, when he conveyed all interest in it
to her, and thereafter she was in possession until her death,

on May 28, 1919. She married Amos W. Laflen, and on November 26, 1913, executed her will devising all her property to Ivan, which was admitted to probate on June 30, 1919. About a week after Mrs. Laflen's death Ivan came out to the farm and notified the tenant that he was now the owner,—the tenant's landlord. On August 4, 1920, the two brothers and three sisters of Walter B. Tillotson, who were still living, and the heirs of the two brothers and one sister who had died, except Hosea L. Tillotson and Zebulon Foster, who were made defendants with Ivan, filed a bill for the partition of the land, claiming that upon Walter's death his widow inherited one-half of the land and his brothers and sisters the other half, all subject to the widow's right of homestead and dower. Ivan answered the bill, claiming the whole of the land descended to him as sole heir of Walter, by virtue of the order of adoption, and averring that upon the death of Walter, claiming to be the owner of all of said real estate in fee simple, subject to the homestead and dower right of Lucetta Tillotson, he entered into possession thereof and collected the rents and profits, claiming to own the land in fee simple until he conveyed it, on January 13, 1904, to Lucetta, who at once entered into the actual possession of the land under claim and color of title made in good faith and remained in such possession under such claim and color of title until her death, during which time she paid all taxes legally levied against the land. The answer set up the will of Mrs. Laflen and claimed the benefit of section 6 of the Statute of Limitations. It also set up and relied on section 4 of the same statute. The cause was referred to a master, who made a report adverse to the complainants, and upon a hearing on the report and exceptions thereto, together with the evidence, the bill was dismissed for want of equity. Don C. Tillotson, one of the complainants, appealed from the decree, and urges that the order of adoption was void for want of jurisdiction in the county court to render it,

and that the Statute of Limitations is inapplicable because there was no adverse possession. The circuit court decided both these questions adversely to the appellant, and if its decision of either was right the decree must be affirmed. If the order of adoption was valid Ivan was the sole heir of Walter B. Tillotson and the complainants had no title; if the order was void but the possession of the land was adverse to the complainants, their right was barred by the Statute of Limitations. In the view we take of the case it will only be necessary to consider the latter question.

The Tillotsons moved from the farm to Urbana about three years before Walter's death and thereafter the farm was rented and occupied by tenants. At the time of his death it was occupied by O. P. McLaughlin under a written lease made in October, 1899, for the year from March 1, 1900, to March 1, 1901. After Walter's death the tenant continued in possession, and the next month Mrs. Tillotson executed a written lease for the farm to McLaughlin from March 1, 1901, to March 1, 1902. Ivan was then still a minor, living at home with Mrs. Tillotson as her son, as he had lived with her and her husband in the latter's lifetime. He reached his majority in December, 1900, and the last payment of rent for the year 1900 ($600) was paid and a receipt given for it dated January 24, 1901, signed by Mrs. Tillotson and Ivan. The rent stipulated in the lease made by Mrs. Tillotson for the year 1901 was paid and receipted for by her and Ivan. In the fall of 1901 she and Ivan, who was described in the lease as her adopted son, joined in the execution of a lease to McLaughlin for the next year. The rent was receipted for by both the lessors, and so for the years 1902 and 1903. On January 13, 1904, Ivan executed to Lucetta a quit-claim deed for the land in question, and thereafter during her life she remained in possession of the land by her tenants, to whom she made leases in her own name. She paid the taxes on the land until her death.

Most of the brothers and sisters of Walter B. Tillotson lived in the neighborhood of the land. They knew of the adoption proceedings in 1885, which were well known throughout the community. Upon Walter's death they made no claim to be his heirs or to have any interest in his estate. They were never recognized by Mrs. Tillotson, the widow, or by Ivan, as having any interest. She did not take any possession of the land as an heir of her husband. Her control of the premises was by virtue of the obvious claim that Ivan, who was a minor, was her husband's heir by virtue of his adoption, subject to her homestead and dower rights. There is no evidence of any act of hers inconsistent with such claim. The lease made shortly after her husband's death for the next year might seem inconsistent with such claim, but not when considered in connection with the fact that Ivan, who held the whole title, was a minor and incompetent to make the lease. As his natural guardian during his minority she might well regard herself as authorized to take charge of the leasing of the farm, and it is evident that she regarded herself as acting for him in connection with the farm, for the rent which became due and was paid within two months after he reached his majority was receipted for by him as well as herself. He reached his majority within two months after this lease was made, and no act inconsistent with his possession of the farm and claim of ownership, subject to the widow's right of dower and homestead, is found in the record. Each one of the leases made was a claim of such a title and each one of the receipts given for rent. On September 25, 1902, they executed together a mortgage for $2000 on the land securing the payment of their note for that amount due in five years. On the same day an affidavit was made by Mrs. Tillotson stating that Walter B. Tillotson died intestate on September 4, 1900, and left as his sole surviving heirs-at-law, his widow, Lucetta, and one child, Ivan F. Tillotson, his adopted son, legally adopted,

as the records will show in Vermilion county, Illinois.   On
August 1, 1910, Mrs. Tillotson executed another mortgage
on the land for $2500, and in connection with it made an
affidavit that Walter B. Tillotson died intestate on or about
September 4, 1900, leaving surviving him Mrs. Tillotson,
his widow, and Ivan F. Tillotson, his son, his only heirs-
at-law.

Frances Knight, a sister of Walter and one of the com-
plainants, testified that she did not know that there was any
talk among the children about the adoption until after Wal-
ter died.   Not very long after he died she heard there was
a flaw in the adoption papers.   A lawyer wrote to her
brother that on account of the adoption proceedings being
faulty they had a right, and her brother wrote the girls
that they could commence suit against the widow.   The
girls objected because they thought a lot of Lucetta.   They
said they would wait until she was through with it, if they
outlived her.   The boys would have done it, but the girls
would not on account of Lucetta.   The time of this infor-
mation of a supposed flaw in the adoption proceedings is
shown by the evidence to have been the summer of 1913,
when the purchasers from Mrs. Tillotson and Ivan of the
property in which Walter was living in Urbana at the time
of his death began proceedings to quiet the title because of
alleged defects in the adoption proceedings.

As a general rule the Statute of Limitations does not
run in favor of one tenant in common against his co-tenants
of the common property.   The possession of one tenant in
common is deemed in law the possession of all and is not
adverse to his co-tenants but is presumed in law to be for
their benefit as well as his own.   This presumption may
be rebutted by evidence, but stronger evidence is required
to prove an adverse holding by a tenant in common than
by a stranger, and the possession of one tenant in common,
the sole receipt of the rents and profits and the payment of
all the taxes are not sufficient for this purpose.   (Water-

*man Hall* v. *Waterman,* 220 Ill. 596; *Roberts* v. *Cox,* 259 id. 232.) The open, notorious, exclusive and continuous adverse possession of land for the period of the Statute of Limitations, with payment of all taxes and incumbrances and appropriation of all the rents and profits under a claim of sole ownership with the knowledge of co-tenants and without accounting to or being called upon to account by such co-tenants, amounts to an ouster of such co-tenants who are under no disability. (*Kotz* v. *Belz,* 178 Ill. 434; *Waterman Hall* v. *Waterman, supra.*) If one tenant in common holds exclusive possession, claiming the land as his, and his conduct and possession are of such a character as to give notice to his co-tenant that his possession is adverse, the Statute of Limitations will run. *Steele* v. *Steele,* 220 Ill. 318.

In *Kotz* v. *Belz, supra,* a widow without children held possession of the real estate which her husband owned at his death, more than thirty years, until her death, when his heirs brought suit for partition among themselves, alleging that she had been in possession as co-tenant with the heirs of her husband. Her heirs were made defendants and answered relying upon his will, which they alleged devised the property to her. The execution and probate of the will were proved, but as it was destroyed in the great Chicago fire in 1871 its contents could not be proved. The widow's declarations while in possession that she was the sole devisee under her husband's will and got everything were held competent, not to prove the contents of the will but to show the kind and extent of the estate she claimed. Her possession was held to have been adverse from the beginning and the Statute of Limitations to have run in her favor.

In *Hughes* v. *Hall,* 284 Ill. 628, the testator was tenant in common with his wife of 120 acres of land. By his will he devised 66 acres of the tract to his grand-daughter at the death or marriage of his widow. After his death the widow and the grand-daughter continued to live on the land

for some time, when the grand-daughter married and moved
away. Her husband died soon after and she returned and
lived with the widow. She again married and she and her
husband lived with the widow on the land. The widow
then married in December, 1905, and the grand-daughter
told her that she had no right to remain on the place. The
widow believed this to be true and moved away. After-
ward the deed which had been made to her and her hus-
band and was thought to have been destroyed by fire was
discovered, and the widow learning that she was a grantee
in common with her husband in that deed took possession
of the land in 1917, the tenant previously in possession hav-
ing moved off the premises. The grand-daughter in the
meantime had been in possession of the land, claiming un-
der the will of her grandfather, for more than the length
of time required by the Statute of Limitations, and it was
held that the will was good color of title, and that her pos-
session, following her notice to the widow that the latter
had no right to remain on the place, was adverse to the
latter's title and that the Statute of Limitations had run in
her favor.

The course of action taken by Mrs. Tillotson and Ivan
after Walter's death in regard to the farm in question was
such as would naturally be followed by a mother and son
upon the death of the husband and father. The son being
a minor and near his majority and the mother being entitled
to dower, she would naturally assume some authority over
the farm. Neither of them was in the actual physical pos-
session of the land, which was occupied by a tenant. Natu-
rally, it was desirable to rent the farm immediately for the
coming year, and this was done. Mrs. Tillotson signed the
lease in her own name because Ivan was not legally com-
petent to do so. Her declarations were competent as show-
ing whether she claimed title to the premises or not. No
oral statements appear in the record, but her acts in collect-
ing and receipting for rents and executing leases of the

farm in connection with Ivan were acts demonstrative of the nature of their claim in regard to the title. Her affidavits in regard to the death of her husband and the heirship of Ivan, in connection with the mortgaging of the property for a loan, all show conclusively that their claim was that Ivan was the owner of the land in fee. There is no reason to suppose that either she or Ivan or any of the brothers and sisters of Walter had any doubt in regard to Ivan's heirship, the validity of the order of adoption or his ownership of the property. Living in the neighborhood, none of them ever suggested any claim of interest in the property or took or suggested any action to enforce a claim of such interest. It was only when notified by the proceeding to quiet title when the lawyer informed them there was a flaw in the adoption proceedings, that any doubt of Ivan's title arose in the minds of any of them. Ivan's conveyance to Mrs. Tillotson, though by quit-claim deed, was good color of title. It purported to convey not "all his interest" in the land but "all interest" in the land. This was a conveyance of the land itself and was good color of title. *Glos* v. *Furman,* 164 Ill. 585; *Waterman Hall* v. *Waterman, supra.*

No dower was ever set off or assigned to Mrs. Tillotson, and it is contended by the appellant that she, after the death of her husband, was entitled to the exclusive possession of the premises as dowress. Section 27 of chapter 34 of the Revised Statutes of 1845 provided that the widow might retain possession of the dwelling house in which her husband most usually dwelt next before his death, together with the outhouses and plantation thereunto belonging, free from molestation and rent, until her dower was assigned. This right was known as the widow's quarantine. In the revision of the statute concerning dower, in 1874, this provision was omitted and since that time no such right has existed. The right of dower before assignment is not an estate in the land but a right of action only to demand as-

signment of dower. (*Heisen* v. *Heisen,* 145 Ill. 658.) The widow has no right of possession until her dower is assigned. In the case of *Lambert* v. *Hemler,* 244 Ill. 254, upon which the appellant relies, John Lambert, the husband, died in the year 1872, while the act providing for the widow's quarantine was still in force, and his widow's continued possession of the whole farm after her husband's death was not adverse to the husband's heirs, who inherited a half interest in the farm subject to her dower and homestead. Her dower was never assigned to her. Her possession was consistent with her right as widow under the statute then in force, and there was no proof of any claim made by her adverse to the title of her co-tenants. In this respect the court distinguishes the case in its opinion from that of *Kotz* v. *Belz, supra,* in which the evidence established the fact that the widow based her right to possession upon a title claimed through her husband's will and not upon her right by virtue of her quarantine. In *Klein* v. *Klein,* 276 Ill. 520, it was incorrectly stated that the widow was entitled to possession of the whole of the premises until her dower was assigned. The abolition of the widow's quarantine by the omission to provide for it in the revision of the statutes in 1874 was overlooked, and the reference to the right as if it still existed, citing *Lambert* v. *Hemler, supra,* is an error.

The evidence in the present case clearly establishes that Mrs. Tillotson never made any claim of title in herself; that she never claimed any right of possession by virtue of her dower, but that the only right of possession which she recognized or acknowledged was that of Ivan. His conveyance of all the land to her on January 13, 1904, constituted the first claim of title which she made and was good color of title in fee. Having been accompanied by payment of taxes for the requisite time under the Statute of Limitations, her title became complete.

The decree of the circuit court will be affirmed.

*Decree affirmed.*